UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

COLIN BOWE,
on behalf of himself and all others
similarly situated,

      Plaintiffs,

v.

**CLASS ACTION**

PUBLIC STORAGE, a Maryland
Real Estate Investment Trust,

      Defendant.

_____/

## COMPLAINT

Plaintiff Colin Bowe ("Plaintiff"), on behalf of himself and all others similarly situated, files this Complaint against Defendant, Public Storage, a Maryland Real Estate Investment Trust ("Public Storage" or "Defendant"), and alleges as follows.

### INTRODUCTION

1.    This is a class action lawsuit filed to redress injuries that Plaintiff and a national and state class of consumers have suffered, and will continue to suffer, as a result of Public Storage's practices relating to its marketing and sale of self-storage insurance policies.

2.    Public Storage requires its customers to maintain insurance for the things its customers store in a Public Storage facility.

3.    Public Storage knows that the purchase of "self-storage insurance" is generally unnecessary because homeowners, renters, or business insurance covers virtually the same items covered by "self-storage insurance."

4.      Nevertheless, Public Storage advises its customers that insurance is necessary, and in fact its standard form contract states that insurance is required.  It encourages its employees to engage in an upsell by marketing and promoting an insurance product called "Perfect Solution Storage," ("Perfect Solution").  Public Storage deceptively markets Perfect Solution as an independent self-storage insurance product that was specifically created to cover property stored outside of the customer's home or business at "low, competitive monthly rates."[1]

5.      Public Storage fails to disclose that this insurance program is, in reality, a hidden profit center for itself that kicks back unconscionable profits at the expense of consumers.

6.      This profit center is evidenced by the fact that the only insurance offered by Public Storage is part of a single Master Policy for Public Storage underwritten by New Hampshire Insurance Company.  *See* **Exhibit 1**, Certificate of Storage Insurance.  There is no underwriting performed for the individual customer's policy.  Thus, there is no correlation between the risk written and the premiums charged.

7.      This, not surprisingly, results in excessive premiums.  For example, for the same price as Perfect Solution's cheapest policy in Florida ($11 per month for $3,000 of coverage), a policy with the company SafeStor offers $4,000 of coverage for only $6 per month.  These excessive premiums are kicked back to Public Storage.

---

[1] Lead plaintiff purchased his insurance policy through Willis Storage Insurance ("Willis"). Subsequent to lead plaintiff's purchase of the policy, Public Storage changed the product name to Perfect Solution Storage Insurance, and brought in a new agent.  Lead plaintiff received a letter from Public Storage noting this transition, but there was no reference to any substantive change in Public Storage's policies or procedures, nor was there any disclosure of Public Storage's illegal kickback scheme described herein.  Therefore, references to Willis in this complaint and its supporting exhibits reflect lead plaintiff's purchase of insurance from the previous agent of Public Storage's insurance promotion scheme.  As the complaint reveals, the change in name is inconsequential, as the deceptive kickback scheme remains the same, as does the underlying insurer.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 424  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

8.     By charging such high premiums and retaining a substantial portion of the premium for itself, Public Storage is able to generate massive amounts of revenues with huge profit margins.  For example, as disclosed in its 2013 Form 10-K filed with the U.S. Securities and Exchange Commission, Public Storage grossed $84,904,000.00 from its tenant reinsurance program in calendar year 2013 alone, with a net profit of 67,837,000.00.  Public Storage's 10-K acknowledges that the year over year rise in revenue for its insurance program was due in significant part to "an increase in average premium rates," demonstrating that it pushes customers into costly and often unnecessary policies in order to enrich itself.

9.     Public Storage does not disclose that it is financially motivated to sell storage insurance to as many of its customers as possible, at the highest premium possible.  Instead, just the opposite is true, as it masks its relationship to the insurance company.  In its standard rental agreements Public Storage states in bold and capital letters: "**[CUSTOMER] UNDERSTANDS THAT [PUBLIC STORAGE] WILL NOT INSURE OCCUPANT'S PERSONAL PROPERTY AND THAT [CUSTOMER] IS OBLIGATED UNDER THE TERMS OF THIS LEASE/RENTAL AGREEMENT TO INSURE HIS OWN GOODS.**"

10.    The only relationship between Public Storage and the insurance company that is disclosed is found in an additional standard form addendum to its rental agreement which, in relevant part, states: "I authorize [Public Storage] to conduct the administrative function of receiving premium to send to the insurance company on my behalf."  Public Storage fails to disclose that it keeps a large part of the premium that it purportedly sends to the insurance company.

11.     In short, Public Storage has engaged in a bad faith pattern of unlawful and unconscionable profiteering, deceit and self-dealing with regard to the self-storage insurance policies it promotes.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff, Colin Bowe, is, and at all material times was, an individual who resides in and is a citizen of Miami-Dade County, Florida.  Plaintiff purchased an insurance policy from Willis Storage Insurance on May 30, 2012.

13.     Defendant, Public Storage, is a Maryland Real Estate Investment Trust, with its principal place of business in California.  It does business regularly throughout the United States, including the state of Florida.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the Defendant.

15.     This Court has personal jurisdiction over Public Storage because it continuously and systematically operates, conducts, engages in, and carries on business in Florida by renting over 13 million square feet of self-storage space from 199 Florida locations.  Moreover, Public Storage purposefully avails itself of Florida's consumer market through the advertisement, promotion, and rental of its self-storage space and self-storage insurance policies in Florida. Pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, this Court has personal jurisdiction over Public Storage.

16.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's causes of action accrued within this judicial district and a substantial part of the events

and omissions giving rise to Plaintiff's claim occurred here, Plaintiff is a resident and citizen of this district, Defendant routinely operates and solicits business in this district, Defendant's wrongful acts in the district have impacted the general public of this district, including Plaintiff, and the ends of justice require that parties residing in other districts be brought before this Court.

## FACTUAL ALLEGATIONS

17.     Public Storage provides self-storage space available for rent to customers at approximately 199 Florida locations and throughout the nation.

18.     Customers are required to execute a standard form rental agreement before Public Storage will rent them self-storage space.  In connection with all of its rentals nationwide, Public Storage uses the same form rental agreement.  A copy of Public Storage's standard form rental agreement is attached to this Complaint as **Exhibit 2**.  That agreement requires renters to maintain insurance on the contents of their storage unit.

19.     The Insurance Addendum to the rental agreement states that "the Lease/Rental Agreement requires [the customer] to maintain insurance that covers loss or damage for the personal property" at Public Storage.

20.     Public Storage has a policy of marketing and selling storage insurance to its customers in order to fulfill this requirement.

21.     The self-storage insurance purchased by lead plaintiff was marketed and sold by Public Storage on behalf of Willis Storage Insurance ("Willis") and was underwritten by New Hampshire Insurance Company ("NHIC").  As noted *supra*, Perfect Solution Storage Insurance recently replaced Willis, but NHIC still underwrites the Master Policy.

22.     Upon information and belief, advertisements and marketing materials for Perfect Solution's insurance can be found in every Public Storage location.

23.     Public Storage's employees are trained to aggressively sell insurance to every Public Storage customer who rents self-storage space.  In fact, Public Storage employees have scripted dialogue and talking points to use when they offer this insurance for sale.  Their sales efforts are assisted by Public Storage's policy that it will not rent storage space without proof of insurance.

24.     At the time when Willis was Public Storage's insurance program administrator, Public Storage employees utilized standard form documents to direct customers to a website, www.willisstorageinsurance.com (the "Willis Website"), which made numerous references to Public Storage and informed customers that "it's a good policy to get insurance [t]hrough the Willis Storage Insurance Program[.]"

25.     Upon information and belief, Public Storage employees now utilize standard form documents to direct customers to the website of their current insurance program administrator, www.perfectsolutionstorageinsurance.com, which makes numerous references to Public Storage and informs customers that insurance for their belongings is required when storing goods at a Public Storage facility.

26.     Willis's insurance was offered at four coverage levels: (1) $2,000 of coverage for $9.00 a month; (2) $3,000 of coverage for $14.00 a month; (3) $4,000 of coverage for $19.00 a month; or (4) $5,000 of coverage for $24.00 a month. Perfect Solution storage offers customers in Florida three coverage levels: (1) $3,000 in coverage for $11 per month; (2) $4,000 in coverage for $13 per month; and (3) $5,000 of coverage for $15 per month.

27.     These monthly premiums are significantly higher than self-storage insurance rates available to consumers on the open market (but not available at Public Storage locations).  For example, on the open market, the self-storage insurer SafeStor offers the following policies: (1)

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 424  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

$4,000 of coverage for $6.00 a month; (2) $10,000 of coverage for $18.00 a month; and (3) $15,000 of coverage for $24.00 a month.  A copy of SafeStor's published rates is attached as **Exhibit 3**.

28.     Public Storage has a strong incentive to push its customers into high-priced insurance policies, because it derives substantial revenue from the sale of the policies.

29.     Annually, Public Storage derives significant revenue from this program.  The program is an inherently deceptive kickback scheme, as unbeknownst to its customers, Public Storage collects a portion of each customer's insurance premium for itself.

30.     As Public Storage's most recently filed Form 10-K revealed, in the year ending December 31, 2013, Public Storage recorded $84,904,000 million in revenue from its tenant reinsurance program.  Likewise, in 2012 the program generated $77,977,000 million in revenue and in 2011 it generated $71,348,000 million in revenue.

31.     Public Storage's pursuit of profits through its tenant reinsurance marketing scheme directly correlates to the high premiums that its insurer charges.  In fact, as Public Storage's 2013 Form 10-K states: "[Public Storage] reinsure[s] policies offered through a non-affiliated insurance company . . . . The level of tenant reinsurance revenue is largely <u>dependent upon the level of premiums charged for such insurance and the number of tenants that participate in the insurance program</u>."

32.     Public Storage is incentivized to sell its customers Willis or Perfect Solution marketed insurance at the highest possible premiums, to its customers' financial detriment.  For example, one of Public Storage's direct competitors, U-Haul Storage, offers its customers the option to purchase policies from SafeStor, who as noted offers better coverage at significantly lower monthly premiums.  Public Storage, however, could not monetize low premiums as

effectively, as their 10-K expressly noted that their reinsurance revenues were boosted by higher premiums paid by customers.

33.     Public Storage's 10-K states that the increase in tenant reinsurance revenues in 2013 and 2012 was due in substantial part to "an increase in average premium rates."

34.     In an inherently deceptive practice, Public Storage does not disclose to its customers that it derives a financial benefit from charging its customers high insurance premiums. Instead, it attempts to disguise its financial interest.

35.     For example, the Insurance Addendum misleadingly states that the Public Storage "facility and its employees are not qualified or authorized to evaluate the adequacy of any insurance" the customer may have and that the specific insurance peddled by Public Storage "is not required in order to store" goods at Public Storage's facility.  Yet, immediately below that statement is a pre-printed Application for Insurance for NHIC only. *See* **Exhibit 4**.

36.     Public Storage's standard form contract requires the customer to purchase and maintain insurance, while failing to disclose that Public Storage has a financial incentive, through a secret kick back, in marketing the high-priced insurance policies it offers. Indeed, the standard form contract does the opposite of disclosing Public Storage's financial interest, as it affirmatively states that the company is not "insuring" the customer's personal property.  The contract gives no indication that Public Storage is engaged in a reinsurance kickback scheme.

37.     The customer is also required to execute an "Insurance Addendum to Lease/Rental Agreement," which, in relevant part, states "I authorize [Public Storage] to conduct the administrative function of receiving the premium to send to the insurance company on my behalf.  I have elected to satisfy my obligation to have insurance for the stored goods by

purchasing the insurance protection available through Willis Insurance Services of California, Inc." *See* **Exhibit 4**.

38.     The Insurance Addendum to the Lease/Rental Agreement represents the insurance premium as a pass-through charge, and fails to disclose that Public Storage keeps a percentage of the premium for itself.

39.     This deception is also evident in the fact that monthly premiums for these insurance policies are added to Public Storage's customers' monthly billing statements as a line-item, separately designated insurance charge, with no indication that Defendant retains a portion of this charge.

40.     Charges for customers' insurance premiums appear on their monthly statements because Public Storage's rental agreement requires that "the additional amount for such insurance coverage must be included with the monthly payments[.]"   A Copy of Plaintiff's monthly statement is attached to this Complaint as **Exhibit 5**.   The bill does not reflect the portion of the insurance premium retained by Public Storage.

41.     Public Storage's monthly statements are designed to lead reasonable customers to believe that monthly insurance premiums collected by Public Storage are pass-through charges. An invoice contains a distinct line item for the monthly rental rate, another distinct line item for the monthly taxes, and yet another distinct line item denoting the monthly charge for storage insurance.   Thus, the monthly statements lead Public Storage's customers to believe it collects insurance premiums and remits the premium amount to the insurer, not that it unjustly enriches itself through retention of a portion of the customer's premium.

42.     Public Storage's standard form rental agreement leads reasonable customers to the same conclusion—that the monthly charges are pass-through costs, not a reinsurance kickback scheme.

43.     Public Storage's financial incentive in selling these insurance policies—derived directly from reinsuring each policy sold—is likewise undisclosed.

44.     On May 30, 2012, Plaintiff Bowe rented self-storage space at Public Storage location number 25579, located at 2851 SW 31st Avenue, Miami, Florida 33133.

45.     Consistent with the requirement found in his Public Storage rental agreement that he maintain insurance for his stored belongings, Bowe purchased $2,000 of coverage for $9.00 a month.

46.     Each month since renting his self-storage space and purchasing self-storage insurance, Bowe has been charged $9.00 on his monthly statement from Public Storage. *See* **Exhibit 5.**

47.     Public Storage has never disclosed to Bowe, or any of the class members, the true nature of its relationship with Willis, Perfect Solutions, or NHIC. Specifically, Public Storage has not disclosed the fact that it offers its insurance policies at inflated premiums and receives a substantial kickback in return.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this Complaint as a class action pursuant to Federal Rule of Civil Procedure 23.

### Class Definition

49.     Plaintiff seeks to represent the following class and subclass:

National Class

All persons who rented storage units from Public Storage within the United States and who purchased self-storage insurance policies through Public Storage within the applicable limitations period (the "Class Period").

Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Florida Subclass

All persons who rented storage units from Public Storage within Florida and who purchased self-storage insurance policies through Public Storage within the applicable limitations period (the "Class Period").

Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

50.     The members of the class number in the thousands and joinder of all class members in a single action is impracticable.

51.     This class action is brought pursuant to Rule 23(b)(2) because Public Storage has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

52.     This class action is brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Bowe's claim and the class members' claims predominate over any question of law or fact affecting only individual class members.

53.     Public Storage has subjected Plaintiff and the members of the Class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is Public Storage's standard business practice.

A.     **Numerosity**

54.     The individual class members are so numerous that joinder of all members in a single action is impracticable.  Public Storage operates approximately 2,000 facilities nationwide and 199 facilities in Florida.

55.     Nationwide, in 2012 alone, Public Storage operated approximately 2,000 locations and issued 700,000 insurance certificates (for policies sold) to its customers.

56.     Assuming that self-storage insurance policies are sold pro-rata by location, there are approximately 70,000 purchasers of self-storage insurance sold by Public Storage's 199 Florida locations.  Each of these 70,000 purchasers is a member of the Class.

57.     While 70,000 Florida class members is an estimate, the exact number of class members in Florida and nationwide, as well as the class members' names and addresses, can be identified from Public Storage's business records.


B.     **Commonality/Predominance**

58.     Common questions of law and fact exist as to Bowe's and the Class members' claims. These common questions predominate over any questions solely affecting individual Class members, including, but not limited to, the following:

a.     Whether Public Storage engaged in a deceptive and unfair business practice by misleading the Class about its financial interest in selling its self-storage insurance product and its receipt of a kickback;

b.     Whether the representations made and insurance premiums collected by Public Storage would lead the reasonable consumer to believe it was a pass-through charge;

c.      Whether Public Storage has a policy and practice of selling its customers storage insurance at inflated premiums to maximize its own profit;

d.      Whether Public Storage receives undisclosed kickbacks, commissions, or fees for advertising and selling self-storage insurance;

e.      Whether Public Storage manipulated the Class through the sale of insurance products in order to maximize its own profits at the expense of the Class;

f.      Whether Public Storage breached its contract with Class Members, and the implied covenant of good faith and fair dealing, by entering into an undisclosed exclusive arrangement with insurance companies which resulted in high premiums for the Class, while representing in the rental agreement that it would not insure the members of the Class;

g.      Whether and to what extent the defendant's conduct has caused injury to the plaintiff and the Class members;

h.      Whether Public Storage breached its contract with Class Members, and the implied covenant of good faith and fair dealing, by keeping kickbacks provided by its insurers, as opposed to providing its customers with more reasonable premiums, while representing in the rental agreement that it would not insure the Class;

i.      Whether Public Storage has done anything to warrant the payment of a commission from insurers;

j.      Whether Public Storage unlawfully enriched itself at the expense of the Class; and

k.      Whether Public Storage's conduct is unconscionable.

**C.      Typicality**

59.     Bowe's claims are typical of the putative Class members' claims because of the similarity, uniformity, and common purpose of Public Storage's unlawful conduct.  Plaintiff, like

all Class members, was damaged through his payment of intentionally inflated insurance premiums.

60.     Each class member has sustained, and will continue to sustain, damages in the same manner as Bowe as a result of Public Storage's wrongful conduct and willful nondisclosures.

**D.     Adequacy**

61.     Bowe will fairly and adequately protect and represent the interest of each member of the Class and Subclass, because he has suffered the same wrongs as the Class Members.

62.     Bowe is fully cognizant of his responsibilities as Class Representative and has retained León Cosgrove, LLC and Grossman Roth, P.A. to prosecute this case.  León Cosgrove, LLC and Grossman Roth, P.A. are experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices, and have the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

63.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.

**E.     The Prerequisites of Rule 23(b)(2) Are Satisfied.**

64.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. Pro. 23(b)(2) exist as Public Storage has acted or refused to act on

grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

65.     Public Storage's actions are generally applicable to the Class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the Class as a whole.

**F.      The Prerequisites of Rule 23(b)(3) Are Satisfied.**

66.     The questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

67.     The likelihood that individual members of the Class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

68.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class. The plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(On behalf of the Florida Subclass)**

69.     Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following.

70.     This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR. | SUITE 424 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

71.     At all times material, Plaintiff and all members of the Florida Subclass were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

72.     At all times material, Public Storage conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

73.     Public Storage has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

74.     The concealment and omissions of material facts and misrepresentations and deceptions alleged in the preceding paragraphs occurred in connection with Public Storage's trade and commerce in Florida.

75.     Public Storage's unfair and deceptive acts and practices violate FDUTPA, Section 501.201 and 501.211, Fla. Stat.

76.     As a direct and proximate result of Public Storage's FDUTPA violations, Plaintiff and the Florida Subclass have been damaged in an amount to be proven at trial.

77.     Plaintiff and the Florida Subclass are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

### COUNT II
### BREACH OF CONTRACT
### (On behalf of the National Class)

78.     Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following.

79.     Defendant Public Storage utilizes a standard form rental agreement with its customers.

80.     This contractual agreement requires customers to purchase insurance for their stored goods, stating "Occupant is obligated under the terms of this lease/rental agreement to insure his own goods."

81.     The contract further states that Public Storage will not insure the customer's goods: "Owner will not insure occupant's personal property." With regard to the Willis and Perfect Solutions insurance, the contract states that Public Storage conducts "the administrative function of receiving the premium to send to the insurance company on [customer's] behalf."

82.     This contract is legally valid and enforceable, and Plaintiff complied with all material terms and conditions precedent by purchasing storage insurance through Willis and Perfect Solutions.

83.     Public Storage breached the contract by, among other things, 1) failing to pass through the entirety of the insurance premium paid by Class members and instead retaining a portion of the insurance premium for its own use; 2) charging Class Members high premiums for insurance despite its promise that this insurance was competitive; and 3) taking for itself as a kickback a portion of what it represented in the contract to be the monthly "premium" for insurance.

84.     Plaintiff and the Class suffered damages as a result of Defendant's breaches.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of the National Class)**

85.     Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following,

86.     This is a count for unjust enrichment.

87.     Plaintiff and each member of the nationwide class conferred a benefit on Defendant through their payment for storage insurance with Willis and Perfect Solutions, allowing Public Storage to enrich itself to the detriment of the Class.

88.     Defendant appreciated, accepted and retained this benefit, as it garnered enormous profits by virtue of its reinsurance kickback scheme.

89.     Under the circumstances, it would be unjust and inequitable to allow the Defendant to retain this benefit, as it was obtained through false and misleading representations.

90.     Plaintiff and the Class suffered damages as a result of Defendant's unjust enrichment.

## COUNT IV
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of the National Class)

91.     Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further alleges the following.

92.     This is a count for breach of the implied covenant of good faith and fair dealing.

93.     Plaintiff and the nationwide class entered into a valid and enforceable standard form contract with Public Storage.

94.     This contract contained the implied covenant of good faith and fair dealing.

95.     Defendant breached the covenant of good faith and fair dealing by, among other things, falsely representing in the contract that its role with its insurer was solely administrative, when in fact Public Storage retains a portion of all insurance premiums for itself, thereby damaging class members.

96.     Plaintiff and the Class suffered damages as a result of Defendant's breach.

## COUNT V
## UNCONSCIONABILITY
### (On behalf of the National Class)

97.      Plaintiff re-alleges paragraphs 1 through 68 as if fully set forth herein and further

alleges the following.

98.      Public Storage's policies and practices with regard to selling self-storage

insurance are or were substantively and procedurally unconscionable in the following respects,

among others:

        a.   Public Storage does not disclose that it was not passing through the entirety of

            the insurance payment it received from Plaintiff and members of the Class;

        b.   Public Storage does not disclose that it was keeping part of the insurance

            "premium" for itself as a kickback; and

        c.   Public Storage falsely represents that its role with its insurer was solely

            administrative.

99.      Considering the great business acumen and experience of Public Storage in

relation to Plaintiff and the Class, its superior and indeed unique knowledge of the arrangement

between itself and the insurer who premiums it purports to be collecting, the material omissions

regarding the insurance being sold and the fact that it retains a substantial part of the insurance

"premiums," the commercial unreasonableness of its kickback arrangement and its concealment

of it, and similar public policy concerns, the contract provisions that allowed Public Storage to

collect the insurance premiums from Plaintiff and the Class are unconscionable and therefore

unenforceable as a matter of law.

100.   The collection of an insurance "premium" that is, in large part, an undisclosed kickback to Public Storage is not reasonably related to the cost of insurance and is itself unconscionable.

101.   Plaintiff and the Class suffered damages as a result of Defendant's unconscionable policies and practices.

## PRAYER FOR RELIEF

Named plaintiff and the plaintiff class request the following relief:

a.   Certification of the National Class and Florida Subclass;

b.   A jury trial and judgment against defendant Public Storage;

c.   An order requiring the Defendant to make full disclosure to consumers of its retention of self-storage insurance premiums sold in its stores and the amount of the kickback it receives;

d.   A declaration that Defendant has breached its contracts with the members of the Class and that its policies and practices regarding the self-storage insurance it sells are unconscionable;

e.   The cost of suit, including reasonable attorney's fees, in accordance with FDUTPA;

f.   General, actual, and compensatory and exemplary damages in an amount to be determined at trial;

g.   Restitution of all insurance premiums paid by Plaintiff and members of the Class, as a result of the wrongs alleged herein, in an amount to be determined at trial;

h.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

i.   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: April 30, 2014                           Respectfully submitted,


                                                *s/Scott B. Cosgrove*
                                                Scott B. Cosgrove, Esq.
                                                  Fla. Bar No. 161365
                                                James R. Bryan, Esq.
                                                  Fla. Bar No. 696862
                                                Andrew B. Boese, Esq.
                                                  Fla. Bar No. 824771
                                                Alec H. Schultz, Esq.
                                                  Fla. Bar No. 35022
                                                Jared R. Kessler, Esq.
                                                  Fla. Bar No. 096020
                                                LEÓN COSGROVE LLC
                                                255 Alhambra Circle, Suite 424
                                                Coral Gables, Florida 33134
                                                Tel:    305.740.1975
                                                Email: scosgrove@leoncosgrove.com
                                                Email: jbryan@leoncosgrove.com
                                                Email: aboese@leoncosgrove.com
                                                Email: aschultz@leoncosgrove.com
                                                Email: jkessler@leoncosgrove.com

                                                and

                                                David M. Buckner, Esq.
                                                  Fla. Bar No.: 60550
                                                Seth E. Miles, Esq.
                                                  Fla. Bar No.: 385530
                                                Brett E. von Borke, Esq.
                                                  Fla. Bar No.: 0044802
                                                GROSSMAN ROTH, P.A.
                                                2525 Ponce de Leon, Suite 1150

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR.  |  SUITE 424  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Coral Gables, Florida  33134
Email: dbu@grossmanroth.com
Email: sem@grossmanroth.com
Email: bvb@grossmanroth.com

*Counsel for Bowe and the Class*