UNITED STATES DISTRICT COURT
SOUTERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:14-CV-21559-UU

COLIN BOWE and BRIAN MORGAN,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                                                **CLASS ACTION**

PUBLIC STORAGE, a Maryland
Real Estate Investment Trust,

      Defendant.
_____/

**PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL, REVOKE *PRO HAC VICE*, AND IMPOSE OTHER SANCTIONS**

Public Storage's counsel solicited putative class members, with interests adverse to Public Storage, to forfeit their rights and assist Public Storage's defense.[1] To do so, Public Storage and its counsel committed a number of ethical violations, including undertaking conflicted representations, providing a financial inducement to at least one witness who provided favorable testimony, and violations of the duty of candor.

Through that campaign, Public Storage obtained at least ten declarations from putative class members who, in declarations drafted by Public Storage's lawyers, purport to desire to opt out of the class. Public Storage's counsel undertook to represent these declarants, all of whom had interests patently adverse to Public Storage, and seemingly advised them, contrary to their own interests, to "opt-out" of the putative class and submit a declaration that Public Storage

---

[1] All references to Public Storage's counsel in this motion refer to Public Storage's lawyers at the Newport Trial Group.

{00053491. 1}                                          1

believed would be harmful to the class' likelihood of recovery. Worse still, Arthur Biringer, received a financial incentive from Public Storage. Of course, "[j]ustice must not be bought or sold." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1525 (S.D. Fla. 1994).

Only two of the original 10 declarants have appeared for depositions (three did not appear despite being subpoenaed, and Public Storage has refused to provide the contact information for the remaining five declarants despite Plaintiffs' requests), and one of the two that did appear walked out before her deposition was concluded. Both of those who did appear revealed that they were never advised by their conflicted counsel about the substance of this action, their rights and roles as putative class members, or the rationale for retaining the defendant's lawyers as their own lawyers. This conduct warrants the most severe sanctions because Public Storage's abusive "[u]nsupervised, unilateral communications with the plaintiff class sabotage[d] the goal of informed consent." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985).

One of the witnesses who appeared, Martha Contreras, provided testimony that is even more damning. Public Storage's counsel misrepresented to Plaintiffs' counsel that they represented Ms. Contreras at a time when, in fact, she had not retained them. Newport Trial Group accepted a subpoena and filed objections on her behalf (as only her counsel could do) to stymie Plaintiffs' discovery efforts, and invoked the attorney-client privilege as to their communications with her. However, she later testified that she had not retained Public Storage's counsel until well after they had served objections—objections she saw for the first time at her deposition—in her name. Newport Trial Group did not misstate some subtle point; they made false statements about the basic fact that they represented a witness at a time when they did not. Public Storage's misleading campaign has threatened this Court's ability to "preserve the

integrity of the class action" and interferes with the administration of justice in this case. *See Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 560 (S.D. Fla. 2008).

As a result, the Court should: (1) convene an evidentiary hearing to gain an understanding of the depths of Public Storage's misconduct;[2] (2) disqualify Public Storage's counsel, the Newport Trial Group, from participating in this case and revoke its *pro hac vice* status; (3) strike all putative class member declarations obtained by Public Storage in this case; (4) require that Public Storage disclose to the Plaintiffs and file with the Court any communications with putative class members; and (5) sanction Public Storage and its counsel by awarding Plaintiffs attorneys' fees for the work related to this motion, including in discovery and depositions.

## ARGUMENT

### I. Public Storage and its counsel financially induced a witness to assist in its defense.

"Quite simply, a witness has the solemn and fundamental duty to tell the truth. He or she should not be paid a fee for doing so." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, (S.D. Fla. 1994). Public Storage and its counsel ignored this golden rule. They committed "extremely serious misconduct," which the Florida Supreme Court has described as an "evil," by offering a witness a financial inducement to tempt him to provide and color his testimony. *See Fla. Bar v. Wohl*, 842 So. 2d 811, 813 (Fla. 2003). Emails document what occurred. *See* (DE 84-19).

This Fall, the Newport Trial Group sent its part-time "field representative" Wynn

---

[2] Public Storage's lawyers and agents may have had contact with dozens or hundreds of putative class members, and in so doing may have poisoned the well in their bad-faith efforts to convince these class members to opt out of the class and assist Public Storage. Plaintiffs are entitled to determine just how much damage has been done, and Plaintiffs reserve the right to seek additional sanctions depending on what we find. *See Kleiner*, 751 F.2d at 1203 ("The damage from misstatements could well be irreparable.").

{00053491. 1} 3

Ferrell—the father of lead counsel Scott Ferrell, who is apparently not a lawyer, paralegal or investigator employed by Newport Trial Group—across the country to solicit Public Storage customers to support the company's defense and opt out of this class action. Ferrell spoke and later met in Orlando with putative class member Arthur Biringer. Biringer believed Public Storage had overcharged him on his rent on his storage unit, and he wanted a refund or credit for being overcharged. *See* (*id.*).

But despite Biringer's unhappiness about being overcharged, he somehow agreed to cooperate with Public Storage's defense. Biringer signed a declaration prepared by Public Storage that expressed complete satisfaction with his experience at Public Storage. "I would do nothing different if I had to do it again," they had him swear under penalty of perjury. *See* (Composite Exhibit A at 7). Public Storage wrote nothing in the declaration it drafted about Public Storage overcharging Biringer for his rent. *See* (*id.*). Biringer also agreed to opt out of this lawsuit, foregoing any money he might be awarded. *See* (*id.*).

The e-mail correspondence also reveals that Biringer received a credit from Public Storage regarding rental fees. *See* (DE 84-19 at 1). Tellingly, according to Biringer, Public Storage's manager insisted that all communication be made over the phone, so "[t]hat way there is no 'trail' of the communication." (*Id.*).

In early November, Biringer received from Public Storage the credit on his rent—or at least Biringer thought he received the credit he was promised. At that point, Ferrell contacted Biringer again. This time, Ferrell asked Biringer: "Would you like to get involved with a deposition to help Public Storage at this time?" (*Id.* at 2). Biringer told Ferrell that he might agree to sit for a deposition, but it "[d]epends on the date and location." (*Id.* at 1). Around this time, Biringer apparently discovered that Public Storage had *not* given him the full credit that he

was expecting. (*Id.*). Biringer's wife, an accountant, "crunched the numbers and discovered that the credit due is much more than what Public Storage gave me." (*Id.*). After he discovered this discrepancy, Biringer stopped cooperating. He told Ferrell: "I'm no longer interested in giving a deposition." (*Id.*).[3]

It is fundamental that attorneys may not improperly induce witnesses to testify. "Attorneys have a solemn responsibility to assure that not even ***the taint of impropriet****y* exists as to the procurement of testimony before courts of justice." *Fla. Bar v. Jackson*, 490 So. 2d 935, 936 (Fla. 1986) (emphasis added). *See also* Rule 4-3.4(b), Fla. Bar. R. of Prof. Conduct ("A lawyer shall not . . . offer an inducement to a witness."); S.D. Fla. L.R. 11.1(c) (incorporating Rules Regulating the Florida Bar into the Court's standards of professional conduct). The Rules of Professional Conduct of this Court and the Florida Bar prohibit Public Storage's conduct, and create a bright-line rule that "a witness may not be paid unless the payments fall within the clearly delineated exceptions, such as payments for reasonable expenses or payments to an expert witness." *Wohl*, 842 So. 2d at 815. Public Storage and its counsel have violated this basic rule. Their conduct cannot be tolerated.

**II.    Public Storage's counsel repeatedly misrepresented that they were counsel for a witness.**

Every lawyer owes a duty of candor to the Court. *See* Rule 4-3.3(a)(1), Fla. Bar. R. of Prof. Conduct ("A lawyer shall not knowingly . . . make a false statement of fact or law to a

---

[3] The Newport Trial Group will likely argue that the rent credit and Biringer's cooperation are unrelated. Several facts belie that argument: (1) Biringer was discussing the credit with Wynn Ferrell, the person charged with procuring testimony for Public Storage, and Mr. Ferrell never expressed surprise or that the issues were unrelated; (2) in drafting Biringer's declaration, Public Storage's counsel at the Newport Trial Group studiously avoided any mention of the reduction in rent Biringer was to receive, even though that is a salient fact with regard to his alleged "satisfaction" with Public Storage; and (3) as soon as the rent reduction failed to meet Biringer's expectations, his testimony was taken off the table by him. This has not prevented Public Storage from continuing to list him as a witness in its disclosures. *See* (Exhibit B at 5-6).

tribunal[.]"); Rule 4-3.3 cmt. (stating that Rule also applies "in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition"). An attorney cannot lie or deceive in order to win. "An attorney is first an officer of the court, bound to serve the ends of justice with openness, candor and fairness to all." *Hays v. Johnson*, 566 So. 2d 260, 261 (Fla. 5th DCA 1990). Public Storage's counsel at the Newport Trial Group made false statements in court papers and to opposing counsel about a fundamental fact: they claimed to represent a witness—and filed court papers in her name—when they did not represent that witness at the time.

They first made false statements when they produced a declaration from putative class member Martha Contreras and four other putative class members on October 13, 2014. Plaintiffs asked Public Storage for the declarants' addresses and phone numbers so that Plaintiffs could investigate Public Storage's *ex parte* communications with members of the Class. Public Storage refused. Instead, the Newport Trial Group warned that Plaintiffs could not communicate with the putative class members directly because ***they represented these putative class members***.[4] *See* (Exhibit C). But this was false.

Next, the Newport Trial Group accepted service of a subpoena for Ms. Contreras on October 30, 2014, because it claimed again that it represented her. *See* (Exhibit D).

Then, on November 13, 2014, the Newport Trial Group served objections to the subpoena in Ms. Contreras' name, and attorney James Hardin signed the objections as Ms. Contreras' attorney. *See* (Exhibit E).

---

[4] Ironically, Public Storage's counsel previously objected to giving Plaintiffs the act information for putative class members, arguing that providing such information would violate those individuals' privacy rights. *See* (DE 55 at 7-10). Yet, Public Storage ignored such concerns when it decided it would use the exact same information to procure *ex parte* declarations from putative class members.

But, Ms. Contreras testified at her deposition that James Hardin—Public Storage's counsel at the Newport Trial Group—did not become her counsel *until* the morning of her deposition on November 20, 2014. (Exhibit F at 104:20 – 105:22). Question: "When did you first get Mr. Hardin as your lawyer or anyone in this case?" Answer: "Today. Today." Question: "Before today, you didn't have a lawyer in this case?" Answer: "No." (*Id.*). In fact, Ms. Contreras testified that she decided "right now"—at the deposition itself—that she needed counsel and Hardin told her "if you feel like you need it, I can represent [you]." (Ex. F at 105:1-22). She had not provided informed consent and a conflict waiver as to Public Storage's counsel's dual representation of her as a putative class member and Public Storage as the defendant in the same dispute. (Ex. F at 102:18 – 103:14).

Before the deposition, Ms. Contreras had never seen the subpoena. (Ex. F at 15:6 – 19:9). She had never seen or authorized "her" objections to the subpoena, which James Hardin filed under her name. (Ex. F at 49:25 – 52:14). She had not known that the subpoena required her to produce documents. (*Id.*). She believed that she was at the deposition voluntarily and not under subpoena. (Ex. F at 141:10 – 142:25).

Ms. Contreras' testimony shows that the Newport Trial Group made false statements to Plaintiffs' counsel about representing her prior to her deposition and served objections under Ms. Contreras' name without her authorization. It took advantage of an unsophisticated customer, without fairly informing her of her rights or the legal allegations, in order to protect the interest of the Newport Trial Group's client, Public Storage. Significantly, it did so to obstruct discovery and undermine the progress of this litigation, which impacts both Plaintiffs and the Court's management of its docket. At the telephonic hearing on Friday, Scott Ferrell changed position and told this Court that Newport Trial Group does not represent any of these putative class

members.[5] There is only one truth, but Public Storage does not seem to have settled on what it is yet.

### III. Public Storage's counsel broke the Rules prohibiting conflicted representation.

Rule 4-1.7 of the Florida Rules of Professional Conduct states: "A lawyer must not represent a client if: (1) the representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."[6] "The rule . . . prohibits more than simply representing a client who is suing another current client; it encompasses *any* representation *directly* adverse to the interests of a current client." *Arrowpac Inc. v. Sea Star Line, LLC*, No. 3:12-CV-1180-J-32JBT,

---

[5] Mr. Ferrell made several statements at the hearing that require further review by the Court in light of representations he and his law firm have made to Plaintiffs. *See, e.g.,* (Exhibit G) (Transcript from Telephonic Hearing on December 5, 2014). Plaintiffs will supplement the Motion with specific record citations to various misrepresentations.

[6] The rule provides the following exception for informed consent, which is not met here:

> **Informed Consent**. Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; ***and***
>
> (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

Rule 4-1.7(b), Fla. Bar R. of Prof. Conduct (emphasis added).

{00053491. 1}                                                8

2013 WL 5460027, at *10 (M.D. Fla. Apr. 30, 2013) (emphasis in original).[7]

Public Storage's counsel at the Newport Trial Group violated Rule 4-1.7. At various times it claimed to represent ten to twenty or more putative class members. Those putative class members stand to recover damages from Public Storage if the class succeeds. Public Storage's interest is in eliminating or at least minimizing those damages. Accordingly, those putative class members have interests that are directly adverse to Public Storage's interests. Public Storage's counsel cannot and could not simultaneously represent Public Storage and putative class members.

Moreover, any purported "opt outs" by those putative class members cannot remedy this conflict. Public Storage's attorneys cannot possibly fully and fairly advise putative class members concerning whether or not to participate in a lawsuit against Public Storage. Clearly then, these declarations were obtained by Public Storage's lawyers by means of misinformation and omission.

The fact that the declarants purport to have "opted-out" of the class changes nothing. First, "[p]utative class members cannot opt out of the class until the class has been certified and a

---

[7] Moreover, the Newport Trial Group appears to have solicited Trosdahl and perhaps others to become their clients. Rule 4-7.18(a) of the Rules of Professional Conduct of the Florida Bar states: "[A] lawyer may not . . . solicit, or permit employees or agents of the lawyer to solicit on the lawyer's behalf, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." This rule addresses "the potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services in that such clients often feel overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest." *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1350 (S.D. Fla. 2009) (internal quotation marks omitted). "[W]hen a lawyer, a professional trained in the art of persuasion, personally solicits an unsophisticated, injured, or distressed lay person . . . [s]uch an individual may place his trust in a lawyer, regardless of the latter's qualifications or the individual's actual need for legal representation, simply in response to persuasion under circumstances conducive to uninformed acquiescence." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 465 (1978).

{00053491. 1 }                                                9

proper notice under [Rule 23] has been issued." *Lee-Bolton v. Koppers Inc*., 848 F. Supp. 2d 1342, 1350 (N.D. Fla. 2011) (holding that affidavits from two putative class members attesting that they had no desire to join the action were ineffective). Prior to receiving appropriate notice under Rule 23—*i.e.* notice that "conveys objective, neutral information" *see Kleiner*, 751 F.2d 1193 at 1202-03—putative class members "cannot be called upon to make an informed decision as to whether they wish to be excluded from the class." *Lee-Bolton*, 848 F. Supp. 2d at 1350.

Second, after a valid opt-out, putative class members may rejoin a class action, even at the settlement stage. *In re Static Random Access Memory (SRAM) Antitrust Litig*., 07-MD-1819 CW, 2013 WL 1222690, at *1 (N.D. Cal. 2013) (noting that "courts have repeatedly allowed putative class members to rejoin a class at the settlement stage" and that "[r]equests to rejoin will generally only be denied when the putative class member's initial decision to opt out of the settlement class was part of a conscious plan to squeeze additional settlement dollars"); *In re Elec. Carbon Products Antitrust Litig*., 447 F. Supp. 2d 389, 396-97 (D.N.J. 2006) (allowing putative class members to withdraw their prior opt-out decisions before approval of settlement). Thus, even if the declarants' "opt-outs" were valid (and they are not), they still would not cure the conflict because the declarants could later opt back in. Public Storage's counsel cannot represent the declarants' interests, as they are obviously adverse to Public Storage's interests. Public Storage's counsel represent Public Storage. They cannot impartially advise putative class members on the benefits of opting-out of the class, assist putative class members in rejoining the class, advocate for those clients to recover damages from Public Storage, or represent those clients' interests in any aspect of this lawsuit.

The Newport Trial Group's purported representation of the putative class members illustrates the inherent conflict of interest in this dual representation. For example, Martha

Contreras revealed that she had no understanding of the allegations in the Amended Complaint or of her role as a putative class member. *See* (Ex. F at 111:5 – 113:10). Her confusion is not surprising. As a putative class member, she can determine whether to pursue damages from Public Storage as an individual or as part of a class, or not at all. Yet her attorneys at the Newport Trial Group, who have been her sole source of information regarding this litigation, also represent Public Storage, and thus cannot vindicate the interests of Public Storage by giving Ms. Contreras any advice other than to opt out and not file a claim at all. Whether that was in her interests seems to have not concerned them at all.

Jane Trosdahl repeatedly insisted that she was participating in the deposition to benefit her local Public Storage facility in White Bear Lake, Minnesota, rather than the corporate entity that is party to the litigation. *See* (Exhibit H at 111:12 – 115:1, 118:7 – 119:3). She also testified that she might reconsider her assistance if Public Storage had committed a crime. *See* (Ex. H at 81:5 – 85:1). The Newport Trial Group, however, did not clarify that the class action has little to do with Ms. Trosdahl's local facility or disclose, much less explain, the racketeering allegations in the Amended Complaint. This stands to reason—the Newport Trial Group was doing, and continues to do, what is in Public Storage's best interest. Ms. Trosdahl is simply a means to an end. However, that is not ethical conduct for an attorney.

Mr. Biringer seeks a recovery from Public Storage for being charged an inflated rent. *See* (DE 84-19). The Newport Trial Group cannot assist Mr. Biringer in recovering damages from their client Public Storage, yet apparently agreed to represent him without any kind of knowing waiver of this conflict. Once again, they cannot fairly advise Mr. Biringer as to whether participation in this class action is the best avenue to pursue recovery for Public Storage's wrongdoing.

Putative class member and Newport Trial Group-procured declarant Joe Wallace subjected himself to sanctions for failing to appear at his deposition. Instead of protecting their client, the Newport Trial Group immediately repudiated their representation of Mr. Wallace when he failed to appear and stated that he had acted improperly by failing to appear to submit to questions from both the Plaintiffs *and* his own counsel. *See* (Exhibit I at 3:17-19, 4:2-5) ("I came all the way out here from California, and as Mr. Cosgrove intended to ask questions of the witness, I did as well . . . . You can subpoena him directly for deposition because I understand that we all wanted him here and he's not here and I think that he should be here to answer your questions"). The Newport Trial Group clearly saw Mr. Wallace as a means to an end as well, and not as a client, even though it claimed to represent him. When Mr. Wallace no longer served Public Storage's ends, the Newport Trial Group dumped him. Thus, because of the Newport Trial Group's conflict of interest, each of the putative class members has legal interests in this action that are not being preserved, and the Newport Trial Group has through its malfeasance created for itself an irreparable conflict.

The Newport Trial Group cannot remedy this conflict. First, there is no option for informed consent or waiver where separate clients have adverse positions in the same proceeding. *See* Rule 4-1.7(b)(3), Fla. Bar. R. of Prof. Conduct (allowing dual representation only if, *inter alia*, "the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal"). And, in any case, the Newport Trial Group has not produced any conflict waivers from the putative class members. *See, e.g.,* (Ex. F at 102:18 – 107:4) (Ms. Contreras testifying she had not given informed consent for the Newport Trial Group's dual representation).

Second, the Newport Trial Group cannot remedy the situation by withdrawing as counsel

for the putative class members. *See Hilton v. Barnett Banks, Inc.*, No. 94-1036CIV-T24(A), 1994 WL 776971, at *3 (M.D. Fla. Dec. 30, 1994) ("Decisional law in this and other jurisdictions prohibits [counsel] from converting [the client] from a current client (subject to Rule 4–1.7) to a former client (subject to the lesser standard of Rule 4–1.9) after the conflict arose. A firm is *per se* ineligible to participate in an action if it has concurrently represented adverse interests *at any point during the action*.") (emphasis added).

### IV. Public Storage's counsel misled putative class members about this case and their rights.

"[T]he Court bears the responsibility under Rule 23(d) to preserve the integrity of the class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 560 (S.D. Fla. 2008). Critically, the Court's oversight requires that "the class receive accurate and impartial information regarding the status, purposes and effects of the class action." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985). "Unsupervised, unilateral communications [by defense counsel] with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Id.* Public Storage has already caused such irreparable harm to the administration of justice. Public Storage's counsel has contacted scores—possibly hundreds—of putative class members and conveyed misleading and incomplete information about this case.

At least four months ago, Public Storage's counsel began a secret campaign to convince putative class members to sign declarations to support Public Storage's defense of this case. It used Wynn Ferrell, its "field representative," and attorney Victoria Knowles to solicit class member witnesses. On October 13, 2014, Public Storage for the first time produced declarations from five putative class members: Joe Wallace, Mark Feldman, Martha Contreras, Shimon

Friedman, and Jane Trosdahl. *See* (Ex. A at 2-6). Three weeks later, Public Storage submitted declarations from five more putative class members—Arthur Biringer, Carole Kimes Nelson Tabirian, Jessica Vargas, John Wood—who claimed that they had no interest in participating in this litigation. *See* (Ex. A at 7-11). The declarations stated: "I have no interest in participating in any [class action] lawsuit against Public Storage related to this insurance." (Ex. A). But, if the declarants did not wish to participate in the case, the declarations did not explain why they had injected themselves into the litigation by signing subpoenas. The declarations also did not explain whether the declarants' purported lawyers at the Newport Trial Group had informed them that by signing the declaration, they would be exposed to subpoenas for depositions and document requests, and subject to the Court's contempt powers.

Only two of the ten declarants have appeared for depositions, and one of them walked out before the deposition was over. Three other declarants failed to appear at duly-noticed depositions. Public Storage refused to provide addresses and contact information for five other declarants.

At Martha Contreras' deposition, she testified that she did not have an understanding of her role or rights as a putative class member. *See* (Ex. F at 111:5 – 113:10). She also testified that she did not have a full understanding of the content or implications of her declaration. *See* (Ex. F at 146:15 – 151:8). Quite clearly she played no role in drafting "her" declaration.

Plaintiffs also deposed putative class member Jane Trosdahl in Minneapolis, Minnesota. *See* (Ex. H). She testified:

- She did not comprehend the substance or basis of her objections to the subpoena, *see* (Ex. H at 68:6 – 75:15);

- She believed that the lawsuit was about "freedom of choice to determine which insurance company [plaintiffs] were going to deal with" and although she was aware that Public Storage's disclosures as to its insurance program was at issue, she was "not clear on that

{00053491. 1}                                                                14

point," *see* (Ex. H at 23:19 – 25:11, 29:19 – 30:3);

- She was not aware of Plaintiffs' RICO allegations, and it was possible that certain developments in the case (about which Newport Trial Group clearly had not informed her) could affect her decision to opt out, *see* (Ex. H at 81:5 – 85:1);

- She believed that her status in the litigation is "essentially with the group that is going with Public Storage," *see* (Ex. H at 65:5 – 65:14);

- She provided her declaration to assist her local Public Storage facility and not the corporate entity being sued, *see* (Ex. H at 111:12 – 115:1, 118:7 – 119:3);

- Public Storage's counsel drafted the declaration, which Ms. Trosdahl did not edit, *see* (Ex. H at 107:20 – 111:11); and

- She had no basis for the statements in her declaration that "I noted that the insurance offered through Public Storage was more affordable than other insurance companies" and "I knew and assumed at the time I purchased my storage insurance that Public Storage may make a profit," *see* (Ex. H at 149:1 – 152:24, 154:23 – 155:3).

The testimony by Ms. Contreras and Ms. Trosdahl confirmed that they were misled by Public Storage's counsel. They do not know that they are putative class members or that they have interests adverse to those of Public Storage. Ms. Contreras had no understanding of her role in this litigation and could not explain statements that Public Storage wrote for her to sign, under penalty of perjury, in her declaration. Ms. Trosdahl was not aware of the RICO allegations, and she did not clearly understand the allegations about Public Storage's lack of disclosures to its customers. She had no substantive support for assertions in her declaration, as drafted by Public Storage's counsel on her behalf. Moreover, she testified that opting out is akin to aligning oneself with the defendant, while, in actuality, an opt-out preserves one's rights to initiate individual litigation against the defendant. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351 (1983) (stating that Rule 23(c)(2) allows litigants to opt out of a class to preserve their right to pursue their own lawsuit.).

The failure of three declarants to appear at their depositions strongly suggests that they

too were misled about the consequences of signing declarations, and backed out when they realized they had been duped by Public Storage. The first declarant, Joe Wallace, did not appear at his deposition, and did not answer calls from his purported lawyers at the Newport Trial Group. *See* (Ex. H). Newport Trial Group apparently "lost contact" with the second declarant, Mark Feldman, who likewise did not appear for his deposition. *See* (Exhibit J). The Newport Trial Group three times postponed and then cancelled at the last minute the deposition of Shimon Friedman, purportedly for health reasons. *See* (Exhibit K).

Public Storage and its lawyers misled putative class members who filed declarations and likely misled numerous other class members that they contacted as part of their nationwide campaign. Courts routinely condemn such unilateral misinformation campaigns as "rife with potential for coercion" particularly, as here, "[i]f the class and the class opponent are involved in an ongoing business relationship[.]" *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985).

V.   **The misconduct by Public Storage and its counsel warrants severe sanctions.**

   A.   **The Court should disqualify the Newport Trial Group and revoke their *pro hac vice* admission.**

A court can disqualify counsel and revoke their *pro hac vice* admission if counsel either violate a specific ethical rule or engage in conduct that interferes with the administration of justice. *In re BellSouth Corp.*, 334 F.3d 941, 958 (11th Cir. 2003) (denying relief for law firm disqualified as counsel and describing two lines of cases that govern disqualification); *Sclumberger Tech., Inc. v Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) (explaining that standard to disqualify counsel already admitted *pro hac vice* tracks disqualification standard). The Newport Trial Group has done both. Its lawyers violated three Rules Regulating the Florida Bar, which this Court has adopted: (1) Rule 4-3.4(b), which prohibits a lawyer from offering an

inducement to a witness; (2) Rule 4-3.3, which prohibits a lawyer from making a false statement; and (3) Rule 4-1.7, which prohibits a lawyer from representing adverse parties in the same proceeding.

The conduct underlying these Rule violations also interferes with the administration of justice. The Court must, under Rule 23, Fed. R. Civ. P., police class actions and ensure that the class receives "objective, neutral information about the nature of the claim and the consequence of proceeding as a class." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985). Public Storage has undermined the Court by misleading members of the class and sowing confusion. As such, the "harsh sanction" of disqualification is warranted. *See Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (affirming dismissal of counsel who violated conflict of interest rules).

### B. The Court should supervise Public Storage's future communications with putative class members and strike the current declarations.

To restrict future communications, a court must find (1) that a communication occurred or is threatened to occur, and (2) the communication must be abusive in that "it threatens the proper function of the litigation." *Jeld-Wen, Inc.*, 250 F.R.D. at 561. Here, Public Storage's communications have misled class members about the case, undermined cooperation with class counsel, coerced putative class members into opting out, and hoodwinked putative class members into retaining Public Storage's counsel, who later abandoned them. Such communications warrant restrictions. *Jeld-Wen, Inc.*, 250 F.R.D. at 561

As a result, the Court should restrict Public Storage's future communication by requiring that: (1) Public Storage communicate with putative class members only in writing signed by counsel of record; and (2) submit any such writings to Plaintiffs' counsel and the Court at least five business in advance of issuing the communication, giving the Court and the Plaintiffs an

opportunity to object. *See Jeld-Wen, Inc.,* 250 F.R.D. at 564-65 (imposing similar restrictions after concluding that defendant had engaged in improper communications with putative class members); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C-05-1175, 2005 U.S. Dist. Lexis 28615, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) (proper remedy for defense counsel's misleading and improper interviews of employee class members pre-certification (conducted to get information and declarations) was the disclosure by the defendant of all employees contacted for interviews, an opportunity for the plaintiff to depose them, and a prohibition on all class member contacts without approval by the court.).

Second, because Public Storage has used improper tactics to obtain declarations from putative class members, those declarations must be stricken. *See Longcrier v. HL–A Co.,* 595 F.Supp.2d 1218, 1229-30 (S.D. Ala 2008) (striking declarations obtained through the defendants' abusive and misleading communications with prospective opt-in plaintiffs). Additionally, the declarants' testimony must be excluded. *See* Fed. R. Civ. P. 37(c) (providing the Court with discretion to exclude testimony as a sanction for discovery violations).

## CONCLUSION

For these reasons, the Plaintiffs respectfully request that the Court (1) convene an evidentiary hearing to look into Public Storage's misconduct, (2) disqualify the Newport Trial Group as counsel for Public Storage and revoke their *pro hac vice* admission to this Court, (3) strike all declarations and testimony obtained from putative class members by Public Storage, (4) issue an order requiring that Public Storage communicate with class members only in a writing submitted five (5) business days in advance to the Plaintiffs and the Court, and (5) award Plaintiffs attorneys' fees for the time spent bringing this motion and deposing Ms. Trosdahl and Ms. Contreras with regard to their improperly-obtained declarations and testimony.

Dated: December 9, 2014

Respectfully submitted,

*/s/ Scott B. Cosgrove*
Scott B. Cosgrove, Esq.
  Fla. Bar No. 161365
Alec H. Schultz, Esq.
  Fla. Bar No. 35022
David A. Karp, Esq.
  Fla. Bar No. 69226
LEÓN COSGROVE LLC
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:     305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: dkarp@leoncosgrove.com


*AND*

*/s/ David M. Buckner*
David M. Buckner, Esq.
  Fla. Bar No.: 60550
Seth E. Miles, Esq.
  Fla. Bar No.: 385530
Brett E. von Borke, Esq.
  Fla. Bar No.: 0044802
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Suite 1150
Coral Gables, Florida 33134
E-mail: dbu@grossmanroth.com
E-mail: sem@grossmanroth.com
E-mail: byb@grossmanroth.com

*Counsel for Plaintiffs Colin Bowe and Brian Morgan and the Class*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I certify that I have conferred in good faith as required by S.D. Fla. L.R. 7.1(a)(3) with Defendant Public Storage's counsel to narrow and resolve many of the disputed issues without court action. Specifically, counsel exchanged email but failed to resolve the disputed issues.

/s/ Scott B. Cosgrove
Scott B. Cosgrove

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by e-mail via the CM/ECF system on December 9, 2014 on the counsel listed below:

| | |
|---|---|
| James B. Hardin, Esq. | Brian W. Toth, Esq. |
| jhardin@trialnewport.com | brian.toth@hklaw.com |
| Scott J. Ferrell, Esq. | Holland & Knight LLP |
| sferrell@trialnewport.com | 701 Brickell Avenue, Suite 3300 |
| Newport Trial Group | Miami, FL 33131 |
| 4100 Newport Place, Suite 800 | Telephone: (305) 789-7510 |
| Newport Beach, CA 92660 | Facsimile: (305) 789-7799 |
| Telephone: (949) 706-6464 | |
| Facsimile: (949) 706-6469 | |

*Co-Counsel for Defendant Public Storage*

{00053491. 1 }