UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-21559-CV-UNGARO/OTAZO-REYES

COLIN BOWE and BRIAN MORGAN
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.                                                 **CLASS ACTION**

PUBLIC STORAGE, a Maryland
Real Estate Investment Trust,

    Defendant.
_____/

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

Plaintiffs' opposition concedes that their RICO claims lack any underlying "market theory of causation" capable of meeting the proximate-cause and damages requirements imposed by Supreme Court and Eleventh Circuit precedent. Instead, plaintiffs hope to evade those requirements by encouraging a jury to "infer" that class members paid too much for TIP insurance in reliance upon allegedly misleading contract documents. But the cases that plaintiffs cite do not authorize that inference; and in any event, plaintiffs lack any legal or evidentiary basis for asserting that they overpaid.

Plaintiffs' opposition also embodies an ironic contradiction: Although they now attempt to recast their case as one about deception of state insurance regulators, they argue that none of Public Storage's allegedly criminal conduct was subject to state insurance regulation *in Florida*—and that FDUTPA's insurance-business exemption therefore does not apply. They fail to see that their own arguments doom their FDUTPA claim.

Plaintiffs' breach of contract and implied-covenant claims fail because plaintiffs still can't point to any contract provision that Public Storage breached. The Lease/Rental Agreement states that Public Storage will not insure—that is, purchase insurance for—its customers; and it never did. The Insurance Addendum states that Public Storage will conduct the administrative function of forwarding premiums to the insurer; and it's undisputed that Public Storage did so.

Nothing compels a company to tell consumers, at the point of purchase, how it will share its profits with business partners. For these reasons and others set forth more fully below, the Court should grant Public Storage's motion for summary judgment.

II.  **ARGUMENT**

   A.  **Plaintiffs cannot save their RICO claims by relying on a purported "inference" of causation that no case law supports.**

Plaintiffs admit that they cannot satisfy the demanding proximate-causation and damages requirements that the Eleventh Circuit set forth in *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702 (11th Cir. 2014), which derive in turn from the Supreme Court's holdings in *Holmes* and

1

*Anza*. *See* MSJ 9–14. Indeed, by asserting that they "do not rely on a market theory of causation," they excuse themselves from even trying to meet the *Simpson* standard. Plaintiffs' Responsive Brief ("RB") 7.

Instead, plaintiffs misread a handful of class-certification decisions as authorizing an easily-established causal inference. According to the plaintiffs, these decisions demonstrate that *if* (**1**) the defendant's standardized written materials featured misrepresentations or omissions, *and* (**2**) class members made excessive payments of some kind to that defendant, a jury may then "infer" that the class members overpaid *because of* those misrepresentations, thereby satisfying RICO's causation element. RB 8.

On its face, this causal-inference doctrine should arouse skepticism. Using the inference, a RICO plaintiff need not prove any direct connection between a misrepresentation in a standardized document and overpayments by class members. Is the Supreme Court's proximate-cause requirement really that easy to satisfy?

It isn't. The causal-inference cases cited by the plaintiffs actually stand for a much narrower proposition: "In the RICO context, class certification is proper when 'causation can be established through an inference of reliance where the behavior of plaintiffs and the members of the class *cannot be explained in any way other than reliance* upon the defendant's conduct.'" *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1089–90 (10th Cir. 2014) (emphasis added). Applying that principle, the cited cases held that a future jury might reasonably infer class-wide reliance (and thus causation) where:

- Doctors never would have signed agreements with the defendant HMOs *but for* the HMOs' false statements that they would timely pay the doctors for medically necessary services they provided to the HMOs' insureds (whereas the HMOs actually had devised elaborate systems for delaying and denying legitimate reimbursement claims) (*Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004), *abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

- Prospective borrowers never would have paid large, nonrefundable up-front fees to a phony "lender" *but for* its false statements that the borrowers were being genuinely evaluated for real-estate loans (whereas the "lender" actually had no intent or ability to make the desired loans and intended only to seize the up-front fees for itself) (*CGC*

2

*Holding*, 773 F.3d at 1091–92);

- Customers never would have paid inflated invoices for food services *but for* the defendant's false representations that the invoices were calculated in accordance with a contractually mandated "cost plus" pricing scheme (whereas the defendant actually had used shell companies and phony invoicing to inflate its apparent "costs") (*In re U.S. Foodservice, Inc. Pricing Litig.*, 729 F3d 108, 120 (2d Cir. 2013));

- Senior citizens never would have invested their savings in the defendant's deferred annuities *but for* the defendant's fraudulent concealment of the fact that the annuities would never even repay what the investors put into them, let alone provide investors with positive returns (*Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360, at *8 (N.D. Cal. June 23, 2010));

- Defaulting borrowers never would have made deficiency payments on their repossessed used cars *but for* the financing company's false notifications that the cars had been sold at legitimate private sales (whereas the cars actually had been returned to the original dealer, who resold them without granting the borrowers any deficiency credit) (*Chisholm v. TransSouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999)).[1]

In each of these cases, there was at least some justification for holding that, if a class were certified, a future jury reasonably could infer reliance (and thus but-for causation)[2] because "the behavior of the plaintiffs and the members of the class [could not] be explained in any way other than reliance upon the defendant's conduct,'" and reliance was viewed as a good-enough proxy for causation. *CGC Holding*, 773 F.3d at 1089–90.

---

[1] It is not clear why the district court felt it necessary to invoke an inference of reliance in *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013), where the defendant allegedly charged borrowers property-inspection fees after "indiscriminately order[ing]" inspections for all mortgage loans that met delinquency criteria that the plaintiffs challenged. It would have been simpler and more logical to hold that most consumers pay their mortgage bills without questioning (or being equipped to question) them.

[2] Plaintiffs' causal-inference cases blur the distinction between "transaction causation" or reliance (which asks whether the misrepresentation caused the victim to enter into the transaction) and "loss causation" (which asks whether the transaction, as opposed to other market forces, caused the claimed injury). *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011). Although native to securities-fraud cases, that distinction is analogous to the one that *Holmes* and *Simpson* draw between mere but-for causation and proximate causation. The Supreme Court has not addressed the question whether the simple but-for analysis in plaintiffs' causal-inference cases satisfies *Holmes*'s rigorous proximate-cause requirement. We submit that it doesn't and that this case shows why. A causal inference based solely on reliance pays insufficient attention to the market mechanisms by which the misrepresentation affected the price the plaintiffs paid, and allows plaintiffs to claim "injury" although they paid the prevailing market price—or less. *Cf. Simpson*, 744 F.3d at 709–13 (requiring precise articulation and proof of market mechanisms that resulted in claimed injury).

3

Here, by contrast, the fact that a class member paid $X for a given amount of TIP insurance does not compel an inference that he never would have paid more than 25% of that amount if the contract had informed him that Public Storage receives "access fees" roughly equal to 75% of the premium.[3] Indeed, plaintiffs' own expert refused to opine as to how class members would have reacted if Public Storage's contracts had disclosed that fact. (SUF ¶ 36). And Geoff Geiger, who moved to intervene as a plaintiff, bought ESS's more-expensive self-storage insurance *despite* disclosures that ESS would profit from it. (SUF ¶¶ 17-23).

Thus, this is *not* a case in which a court can look at the alleged facts and say with confidence that the behavior of the plaintiffs and class members "cannot be explained in any way other than reliance upon" the allegedly criminal conduct. *CGC Holding,* 773 F.3d at 1089–90. Here, alternative explanations exist. Most notably, the plaintiffs and class members may well have purchased the TIP insurance because it was priced reasonably relative to the market, and because they just didn't care whether Public Storage participated in and profited from TIP insurance sales. (SUF ¶¶ 17-25). The existence of these alternative explanations means—as a matter of law—that plaintiffs in this case cannot substitute an inference for the detailed causal inquiry mandated by *Simpson*, *Holmes*, and *Anza*. The legal preconditions for invoking that inference do not exist here.

Moreover, even if the plaintiffs' ultra-lenient interpretation of the causal inference were correct (which it's not), they still couldn't prove either of the two legal preconditions for applying that inference—namely: (1) misrepresentations or omissions in a standard contract, and (2) overpayments by class members. As to the first precondition, Public Storage's standard contracts simply do not contain any misrepresentation or omission. *See* Part II.C., below

---

[3] Plaintiffs attempt to walk back their repeated admissions and representations that they are *not* claiming that they would have rejected TIP insurance had the disclosures been made, only that they would have paid less for that insurance. RB 10 n.6. But it is far too late for them to disavow the statements they made in their interrogatory responses and class-certification motion, and which they instructed their expert, Mr. Stone, to adopt as the basis for his damages analysis. *See* MSJ 7, 12; SUF ¶ 32.

4

(discussing the breach-of-contract claim). As to the second precondition—overpayments—plaintiffs have no evidence whatsoever that they or the class members paid too much for the TIP insurance. Their expert, Robert Stone, admitted that he had conducted no market analysis and had no opinion as to whether the plaintiffs had overpaid. (MSJ 8 & nn.3-4, 12; SUF ¶¶ 35-37). *Simpson*, of course, provides the roadmap for proving that a RICO violation affected prices—but plaintiffs admit that they have no "market theory of causation" that could satisfy *Simpson*. RB 8.

Plaintiffs now assert that their proof of overpayment "comes directly from" a Transfer Pricing Report prepared by Ernst & Young, which they claim shows that the entire access fee is an add-on to the actual "cost" of providing the insurance and thus represents "pure profit to Public Storage." RB 7. In fact, the Report is expressly limited to technical income-tax issues and disclaims any intention of opining on non-income-tax issues. (Dkt. 235-21, Composite Ex. 14 at PS000158331). One such non-income-tax issue that the Report does not address is whether any law or contract limits the amount of profit that Public Storage can derive from TIP insurance sales. And even if Ernst & Young *had* purported to opine on that subject, its Report has not been enacted into law. Tellingly, plaintiffs' opposition fails to cite any *legal authority* requiring Public Storage to accept a lower amount of profit on TIP insurance sales than it did. Plaintiffs therefore remain unable to explain why it must be an "overcharge" for a company to charge any premium that exceeds the "actual cost of providing the insurance."

Plaintiffs' final bid to evade their causal burden is to claim that Public Storage made misrepresentations to insurance regulators about its loss ratios. RB 4-5. That argument is not only unsubstantiated but legally irrelevant, as plaintiffs have submitted no evidence that those alleged misrepresentations proximately caused them to pay more for TIP insurance. Their only theory is that "but for" the alleged misrepresentations, regulators would have required Public Storage to charge less for TIP insurance. This theory was never pled or disclosed in discovery, and it is far too late in the day for plaintiffs to rewrite their complaint. And even if plaintiffs' accusations were true, but-for causation is not enough to carry plaintiffs' proximate-cause burden under *Holmes*, *Anza*, and *Simpson*.

In sum: plaintiffs have misread a few class-action decisions so as to excuse themselves from having to articulate and prove a direct, market-based causal relationship between the alleged misrepresentations and omissions and the price that the plaintiffs and class members paid for TIP insurance. Plaintiffs' attempt to evade their causal burden fails. Accordingly, the Court should grant summary judgment for Public Storage on plaintiffs' RICO claims, Counts VI-VIII.

**B.     Plaintiffs cannot avoid the FDUTPA insurance exemption.**

Plaintiffs offer two meritless arguments why the FDUTPA insurance exemption, Fla. Stat. § 501.212(4)(a) & (d), does not apply here.

First, plaintiffs argue—ironically, given their strenuous last-minute efforts to transform this into an insurance-regulation case[4]—that the FDUTPA exemption doesn't apply because Public Storage isn't an insurer and therefore isn't regulated under laws administered by OIR and DFS. RB 14–16. But the exemption doesn't just cover any "person" regulated under OIR-administered laws. It also covers any "activity" so regulated. Fla. Stat. § 501.212(4)(a). And Florida's insurance regulations govern, among other things, any unfair deceptive *practice* in connection with the sale of insurance. *See* MSJ 15-16.

Plaintiffs also argue that—although TIP premium rates are regulated by many states (*see* RB 4-5)—the access fee that supposedly causes those rates to be excessive is a "separate fraudulent activity" *not* regulated by OIR and DFS. RB 16. That argument makes no sense on its face and also contradicts the testimony of plaintiffs' own insurance-industry expert, Tim Ryles, who insisted that Public Storage's activities violated the very Florida statutes that OIR enforces. *See* MSJ 15-16.[5] Plaintiffs' narrow interpretation of the FDUTPA insurance exemption would

---

[4] *See* RB 4 ("From the inception of the TIP, Public Storage also deceived the insurance regulators in numerous states to obtain TIP approval"); Dkt. 264 at 2 (stating that "Public Storage has also deceived the insurance regulators in numerous states in order to have its captive license approved, to obtain TIP approval, and about its role in the sale of the TIP").

[5] If accepted, the plaintiffs' "separate fraudulent activity" argument would gut their RICO argument (discussed above in Part II.A.) that Public Storage's misrepresentations to regulators about its loss ratios "caused" plaintiffs' losses. That theory posits that state regulators can dictate whether and how much Public Storage received as access fees and would have lowered that amount had they known the TIP's true loss ratios. The "separate fraudulent activity" argument,

effectively write the exemption out of the law, thus overriding the Legislature's decision to create a separate statutory scheme—FUITPA—to define and regulate all unfair or deceptive insurance-industry practices. *See* MSJ 15-16. The cases that the plaintiffs cite in support of their "separate activity" argument do not support that result. *See* RB 14. All three involved suits *by an insurer*—State Farm—against entities that submitted fraudulent *billing statements* to it for payment. OIR doesn't regulate the submission of fraudulent bills to insurers, so all three cases are irrelevant.

As a last-ditch maneuver, plaintiffs dispute whether DFS grants Public Storage branches limited-lines licenses authorizing them to offer TIP insurance. RB 15-16. They do; we proved it (SUF¶ 28); and plaintiffs have no evidence to the contrary. Plaintiffs also argue that Public Storage can't invoke the FDUTPA exemption after having denied that it sells insurance. RB 15. But Public Storage has never denied that it sells insurance or that it requires—and holds—a limited-lines license authorizing it to do so. It denies that it is its customers' insurer—and plaintiffs agree that it isn't.

Accordingly, the Court should dismiss Count I.

### C. Plaintiff still can't identify a single contract provision that Public Storage breached.

Plaintiffs continue to fail to identify any contract provision that Public Storage breached. Their Amended Complaint refers only to two provisions that indisputably *weren't* breached.

The first is in Section 6 of the Lease/Rental Agreement, which states: "Occupant understands that *[Public Storage] will not <u>insure</u> Occupant's personal property* and that Occupant is obligated under the terms of this lease/rental agreement to <u>*insure*</u> his own goods." Am. Compl., ¶¶ 88-89 & Ex. 2, § 6 (capitalization omitted; emphases added). In this provision, "insure" can only mean "purchase insurance coverage for," as evidenced by the statement that

---

by contrast, posits that state regulators have no authority over access fees.

7

the customer is "obligated . . . to *insure* his own goods." Obviously, that statement can't mean that the customer must become his own insurer and is therefore barred from obtaining insurance from any bona fide insurance company. Rather, it means that the customer must *purchase insurance for* his own goods. Likewise, Public Storage will not "insure"—that is, *purchase insurance for*—those goods. It is an indisputable fact that Public Storage *does not* purchase insurance for its customers' property. The customers do that. This provision was, indisputably, not breached.

The Amended Complaint also references this statement in the Insurance Addendum: "I authorize [Public Storage] to conduct the administrative function of receiving the premium to send to the insurance company on my behalf." Am. Compl., ¶ 89 & Ex. 4. But Public Storage *does* conduct the administrative function of receiving premiums to send to the insurance company. This provision was, indisputably, not breached.

In yet another belated attempt to retool their case, plaintiffs now add a new allegation—found nowhere in their Amended Complaint—that Public Storage breached the following italicized language in Section 6 of the Lease/Rental Agreement: "Occupant understands that if Occupant elects to obtain the insurance available at the Property, the additional amount for such insurance coverage must be included with the monthly payments as noted above. Further, *all payments received will be applied as noted above*." Am. Compl., Ex. 2, Section 6 (emphasis added). Plaintiffs contend that this language barred Public Storage from "applying" a customer's premium payments to access fees. RB 16. But the only statement about how payments will be "applied" that appears "above" Section 6 in the Lease/Rental Agreement is this one, in the Agreement's first (non-numbered) paragraph: "Occupant acknowledges that . . . all payments are to be *applied to the oldest delinquency first*, including late charges and other fees which have become due." Am. Compl., Ex. 2 (emphasis added.) Unless plaintiffs are now suing for breach of the oldest-delinquency-first rule, the newly identified language in Section 6 is irrelevant.

Plaintiffs again place mistaken reliance on the Transfer Pricing Report when responding to Public Storage's point that they would be unjustly enriched if they obtained *both* the insurance

8

they paid for (as they indisputably did) *and* the access fees they seek to recover. Plaintiffs respond that their enrichment would not be unjust, because Public Storage had no right to earn more from the TIP sales than an "industry-standard profit" identified in the Report. RB 17. As previously discussed, however, the Report was expressly limited to technical income-tax issues. The Report has not been enacted into law; and plaintiffs cite no *legal authority* requiring Public Storage to earn less profit than it did from TIP sales. *See* Part II.A., above.

Accordingly, the Court should grant summary judgment for Public Storage on Count II (and also on Count IV for breach of the good-faith covenant, to the extent that it encompasses the same cause of action).

### D. Plaintiffs cannot press a claim for unjust enrichment while seeking to enforce an express contract.

As discussed in Part II.C., above, plaintiffs continue to assert their claim for breach of an express contract. Accordingly, they have no claim for unjust enrichment. *See* MSJ 18-19. The Court should grant summary judgment for Public Storage on Count III.

### E. Florida law does not authorize an independent cause of action for breach of the covenant of good faith and fair dealing.

This Court already has held that "Florida does not recognize a claim for a breach of covenant of good faith and fair dealing independent of an action for breach of contract." Dkt. 27 at 8. And plaintiffs do not dispute that Florida law governs their breach-of-covenant claim. Instead, they challenge this Court's ruling by citing *Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Insurance Corp.*, No. 06-81046-CIV, 2007 WL 2225972 (S.D. Fla. Aug. 1, 2007), for the proposition that breach of express contract and breach of the implied covenant are two "different" causes of action that "both exist under Florida law." RB 18-19 (quoting *Chalfonte* at *3). But that's not what *Chalfonte* says. *Chalfonte* states that *insurance bad-faith* and breach of the implied covenant are two different causes of action that both exist under Florida law. 2007 WL 2225972, at *3. *Chalfonte* also states that "[a] breach of implied covenant of good faith and fair dealing cannot be maintained absent breach of an express term of the contract" (*id.*)—just as

this Court previously held. Accordingly, Florida law does not authorize an independent cause of action for breach of the covenant, and the Court should grant summary judgment for Public Storage on Count IV.

### F. Plaintiffs lack standing to assert claims for injunctive relief.

Plaintiffs tacitly acknowledge our argument that the sole proposed class representative ended his tenancy in May 2013 and that plaintiffs therefore lack standing to seek injunctive relief. But they assert that a different (non-representative) class member will do just as well. RB 20. They are wrong. It makes no difference that putative class members may have standing to seek prospective injunctive relief, because "it must be established that the *proposed class representatives* have standing to pursue the claims as to which classwide relief is sought." *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (emphasis added). Plaintiffs' citations involving *post-certification* mootness of a class representative's claim are not on point. Accordingly, the Court should grant summary judgment for Public Storage on all of plaintiffs' claims for injunctive relief.

### G. Plaintiffs' lack of standing to seek injunctive relief also dooms their "unconscionability" claim.

Plaintiffs contest Public Storage's argument that their unconscionability claim must be dismissed because they no longer seek any equitable relief on that claim. They claim that the relief in question is found in the Amended Complaint's prayer for "[a]n order requiring the Defendant to make full disclosure to consumers of its retention of self-storage insurance premiums sold in its stores and the amount of the kickback it receives." But forced disclosure is injunctive relief—and, as explained above in Part II.F., plaintiffs lack standing to seek such relief. Accordingly, the Court should grant Summary Judgment for Public Storage on Count V.

### III.   CONCLUSION

For all the reasons stated here and in Public Storage's opening brief, the Court should grant summary judgment for Public Storage on all Counts.

Dated:  March 27, 2015.                           Respectfully submitted,


                                                  s/*David P. Ackerman*
                                                  David P. Ackerman (Florida Bar No. 374350)
                                                  dackerman@alslaw.com
                                                  Scott J. Link (Florida Bar No. 602991)
                                                  slink@alslaw.com
                                                  Kristen L. McKeever (Florida Bar No. 0103739)
                                                  kmckeever@alslaw.com
                                                  E. Raul Novoa (Florida Bar No. 94686)
                                                  rnovoa@alslaw.com
                                                  ACKERMAN, LINK & SARTORY, P.A.
                                                  777 South Flagler Drive
                                                  Suite 800 East
                                                  West Palm Beach, Florida 33401
                                                  Telephone: (561) 838-4100
                                                  Facsimile:   (561) 838-5305

                                                  KEKER & VAN NEST LLP
                                                  633 Battery Street
                                                  San Francisco, CA  94111-1809
                                                  Tel:  (415) 391-5400
                                                  Fax:  (415) 397-7188

                                                  John W. Keker (*pro hac vice*)
                                                  jkeker@kvn.com
                                                  Steven A. Hirsch (*pro hac vice*)
                                                  shirsch@kvn.com
                                                  David J. Silbert (*pro hac vice*)
                                                  dsilbert@kvn.com
                                                  Quyen Ta (*pro hac vice*)
                                                  qta@kvn.com
                                                  Paven Malhotra (*pro hac vice*)
                                                  pmalhotra@kvn.com
                                                  Michelle Ybarra (*pro hac vice*)
                                                  mybarra@kvn.com
                                                  Erin E. Meyer (*pro hac vice*)
                                                  emeyer@kvn.com
                                                  Anjali Srinivasan (*pro hac vice)*
                                                  asrinivasan@kvn.com

                                                  *Counsel for Defendant Public Storage*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on March 27, 2015 on all counsel or parties of record on the Service List below.

                                               s/*David P. Ackerman*
                                               David P. Ackerman

### SERVICE LIST
*Colin Bowe and Brian Morgan v. Public Storage*
*Case No. 14-21559-cv-Ungaro/Otazo-Reyes*
*United States District Court, Southern District Of Florida*

| | |
|---|---|
| David P. Ackerman | John W. Keker (*pro hac vice*) |
| dackerman@alslaw.com | jkeker@kvn.com |
| Scott J. Link | Steven A. Hirsch (*pro hac vice*) |
| slink@alslaw.com | shirsch@kvn.com |
| Kristen L. McKeever | David J. Silbert (*pro hac vice*) |
| kmckeever@alslaw.com | dsilbert@kvn.com |
| E. Raul Novoa | Quyen Ta (*pro hac vice*) |
| rnovoa@alslaw.com | qta@kvn.com |
| Ackerman, Link & Sartory, P.A. | Paven Malhotra (*pro hac vice*) |
| 777 South Flagler Drive, Suite 800 East | pmalhotra@kvn.com |
| West Palm Beach, FL  33401 | Michelle Ybarra (*pro hac vice*) |
| Telephone:  (561) 838-4100 | mybarra@kvn.com |
| Facsimile:  (561) 838-5305 | Erin E. Meyer (*pro hac vice*) |
| *Counsel for Defendant Public Storage* | emeyer@kvn.com |
| ***Via ECF*** | Anjali Srinivasan (*pro hac vice*) |
| | asrinivasan@kvn.com |
| | Keker & Van Nest LLP |
| | 633 Battery Street |
| | San Francisco, CA  94111-1809 |
| | Tel:  (415) 391-5400 |
| | Fax:  (415) 397-7188 |
| | *Counsel for Defendant Public Storage* |
| | ***Via ECF*** |

| | |
|---|---|
| Scott B. Cosgrove | David M. Buckner |
| scosgrove@leoncosgrove.com | dbu@grossmanroth.com |
| Alec H. Schultz | Seth E. Miles |
| aschultz@leoncosgrove.com | sem@grossmanroth.com |
| LEÓN COSGROVE, LLC | Brett E. von Borke |
| 255 Alhambra Cir. Ste. 424 | bvb@grossmanroth.com |
| Coral Gables, FL 33134 | GROSSMAN ROTH, P.A. |
| *Counsel for Plaintiff* | 2525 Ponce de Leon, Ste. 1150 |
| ***Via ECF*** | Coral Gables, FL 33134 |
| | *Counsel for Plaintiff* |
| | ***Via ECF*** |

1097556