UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-cv-21559-Ungaro/Otazo-Reyes

BRIAN MORGAN,
on behalf of himself and all others
similarly situated,

      Plaintiffs,

v.

PUBLIC STORAGE, a Maryland          **CLASS ACTION**
Real estate Investment Trust,

      Defendant.
_____/

**ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT,
CERTIFYING SETTLEMENT CLASS, AND APPROVING NOTICE PROGRAM**

THIS MATTER is before the Court on the Class' Unopposed Motion for Preliminary Approval of Class Settlement, for Certification of the Settlement Class, and Approval of the Notice Program [D.E. 367]. The Class moves for Preliminary Approval of the Settlement Agreement and Release attached as Exhibit A to the Class' Motion for Preliminary Approval ("Settlement" or "Agreement"), which will resolve all claims against Defendant Public Storage in this lawsuit. As described in further detail below, the Settlement provides substantial relief for the Settlement Class, and its terms are well within the range of reasonableness and consistent with applicable case law. Consequently, the Court grants Preliminary Approval, certifies the Settlement Class, and approves the Class' proposed Notice Program.

## I.   <u>INTRODUCTION</u>

On April 30, 2014, then-lead Plaintiff Colin Bowe sued on behalf of himself and all others similarly situated who purchased insurance through the tenant insurance program ("TIP") offered at Public Storage.   The Plaintiff alleged that Public Storage deceived its customers when it promised to pass through a self-storage insurance premium to an independent insurance company but instead kept a significant portion of the premium for itself.   The Plaintiff claimed that as a result of Public Storage's conduct, Public Storage had violated, among others, Florida's Deceptive and Unfair Trade Practices Act, breached its contract, was unjustly enriched, breached the covenant of good faith and fair dealing, and that Public Storage's conduct was unconscionable.   Public Storage vigorously denied the Plaintiff's claims.

This lawsuit has been actively litigated for more than seventeen months.   The Parties engaged in significant motion practice and extensive formal discovery, including twenty-seven (27) depositions and the production of more than 300,000 pages of documents and electronically stored information.   The lawsuit involved sharply opposed positions on several fundamental legal and factual questions, including whether the insurance exemption applied to the Class' FDUTPA claim, whether materiality was an element of FDUTPA, whether Public Storage's statements and conduct were deceptive, and what type of proof could be used to prove deception under FDUTPA.   Public Storage consistently argued that it had not violated FDUTPA, and that the insurance exemption applied to the Class' FDUTPA claim and it therefore failed as a matter of law.

The Parties mediated this case twice before experienced mediators.   Those mediation discussions continued after the Court's Calendar Call on September 3, 2015.   On Saturday, September 5, 2015, three days before trial was to begin, the Parties reached agreement on the material terms of a Settlement.   A Summary Agreement memorializing those material terms was

executed on September 5, 2015.  Over the next couple weeks, the Parties engaged in a series of detailed discussions finalizing the terms of the Settlement Agreement.  Once those additional terms were agreed to, the Settlement Agreement was finalized and executed by the Parties on October 9, 2015.

Under the terms of the Settlement, Settlement Class Members who do not opt out will be able to claim up to 50% of their alleged losses.[1]  Settlement Class Members will be able to submit a claim form online and Public Storage's records will be used to determine the amount of the Class' members allowed damages.  Settlement Class Counsel, Public Storage, and the Claims Administrator will use Public Storage records and apply the formula detailed in paragraph 35 of the Agreement to calculate each Settlement Class Member's payment under the settlement.  The Class seeks Preliminary Approval so that it can notify Settlement Class Members of the terms of the Settlement, and provide them with an opportunity to opt out of, or object to, the Settlement.  For the reasons set forth herein, the Court grants Preliminary Approval of the Settlement.

## II.    STATEMENT OF FACTS

### A.    FACTUAL BACKGROUND

#### 1.    Procedural History

The Plaintiff brought this lawsuit seeking monetary damages and declaratory and injunctive relief arising from Public Storage's offering of the TIP, alleging that Public Storage deceived its customers when it promised to pass through a self-storage insurance premium to an independent insurance company but instead kept a significant portion of the premium for itself.  The Plaintiff alleged that as a result of Public Storage's deception, the Class paid millions of dollars in undisclosed fees to Public Storage.

---

[1] In the event that the claims exceed the amount of the Settlement Fund after costs and attorneys' fees have been deducted, each Settlement Class Members' claim of their allowed damages will be allocated on a *pro rata* basis.

Public Storage vigorously denied all of the Class' allegations of wrongdoing. Public Storage consistently defended its conduct by, *inter alia*, arguing that it did not deceive its tenants in any way, that any alleged deception was immaterial to tenants, that tenants got the full benefit of their bargain, and that it complied with all applicable laws. Public Storage also asserted that the insurance exemption applied to the Class' FDUTPA claim thereby prohibiting the Class' claim under FDUTPA. Furthermore, Public Storage advanced a variety of affirmative defenses.

On June 2, 2014, Public Storage moved to dismiss the Class' Complaint and moved to strike the nationwide allegations contained in the Complaint. [D.E. 13, 14]. On July 2, 2014, the Court denied Public Storage's Motion to Dismiss and its Motion to Strike Nationwide Class Allegations. [D.E. 27]. After extensive briefing and multiple hearings on how electronic documents should be produced in this litigation, the Court entered its Order on Electronically Stored Information ("ESI") on August 18, 2014.

During the course of discovery, Public Storage produced more than 300,000 pages of documents. In addition, more than 13 third-parties were served with subpoenas resulting in tens of thousands of additional documents produced. Class Counsel created a large document review team responsible for reviewing and analyzing the documents. During the litigation, more than 27 party and non-party witnesses were deposed, and Public Storage deposed all of the proposed class representatives.

The Court on April 29, 2015, granted the Class' Motion to Certify the Class. [D.E. 305]. Shortly thereafter, the Court approved a notice program. [D.E. 320]. Class Counsel provided notice to more than 200,000 Class Members through email and postcard notice. Class Counsel received hundreds of calls about the litigation and provided information and updates to Class Members. The Court on May 19, 2015, denied Public Storage's Motion for Summary Judgment.

[D.E. 313].  After the Court's denial of summary judgment, the Parties prepared for trial. The Parties challenged each other's experts under *Daubert* and other standards, moved *in limine* to exclude other evidence, and submitted exhibit lists and deposition designations.  The Court issued a series of orders addressing those issues.  The Parties attended the Court's September 2 and 3, 2015 calendar calls and trial was scheduled to begin on September 8.  The Parties agreed to the material terms of a Settlement on September 5, 2015, and signed the Settlement Agreement on October 9, 2015.

> 2.    **Settlement Negotiations**

Pursuant to the Court's Order, the Parties mediated on February 25, 2015 with Judge Juan Ramirez.  The Parties were unable to resolve the dispute at that mediation and were ordered by the Court to mediate again.  On May 28, 2015, Class Counsel and Public Storage participated in mediation with Judge Gary Feess.  The Parties were unable to reach a settlement during that mediation.  However, the Parties continued settlement discussions after both mediations.  After the Court's Calendar Call on September 2 and 3, 2015, the Parties again renewed their prior settlement discussions.  On September 5, 2015, the Parties executed a Summary Agreement memorializing the material terms of the Settlement.  After five weeks of negotiation, the Parties executed the Settlement Agreement on October 9, 2015.

> B.    **SUMMARY OF THE SETTLEMENT TERMS**

The Settlement's terms are detailed in the Agreement attached as Exhibit A to the Class' Motion for Preliminary Approval.  The following is a summary of the material terms of the Settlement.

> 1.    **The Settlement Class**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

All persons who rented storage units from Public Storage within the state of Florida and who purchased self-storage insurance policies through Public Storage from May 1, 2010 through June 18, 2015.

Excluded from this Class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

### 2.       Monetary Relief for the Benefit of the Class

The Settlement creates a settlement fund of $5,000,000, ("Settlement Fund") that will be paid by Public Storage.  The Settlement Fund will be used to pay the Class' costs and attorneys' fees.  Class Members will be able to claim up to 50% of their alleged damages using the formula in paragraph 35 of the Settlement.  In the event that there are any funds left after all attorneys' fees, costs, and claims have been paid, those funds will revert to Public Storage.  If the claims should exceed the amount of the Settlement Fund, Class Members' payments will be allocated on a *pro-rata* basis.  Settlement Class members will have 60 days from the date of the mailing of notice to the Settlement Class to file a claim.  Likewise, Settlement Class members will have 60 days from the date of the mailing of notice to the Settlement Class to object to, or opt out of, the Settlement.

Settlement Class Members will be asked to provide only basic information when submitting a claim and will be able to submit claims online and through the mail.  Specifically, Settlement Class Members will only be asked to provide their name, address, rental location, and dates of rental.  The Claims Administrator will be able to compare the claims submitted by the Settlement Class Members with Public Storage's records to ensure accuracy.  In the event that Settlement Class Members submit incorrect information, they will still receive a settlement payment if their claim can be verified through Public Storage's records.

Thus, all Settlement Class Members who file a valid claim will receive a distribution from the Settlement Fund.  The calculation used to determine the Settlement Class Members' damages is described in paragraph 35 of the Agreement.  Settlement Class Members will be able to recover up to 50% of the amount of their alleged damages under the Settlement.  Any uncashed or returned checks will remain in the Settlement Fund for six months from the date the first Settlement Fund Payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Members' payments.  Any residue still remaining after that period will revert to Public Storage.

### 3.        Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will have been deemed to provide Public Storage, its affiliated companies, and their officers, employees, directors, and agents with a release of all claims that were brought or could have been brought by them in this litigation.  However, claims for property damage or other losses covered by the tenant insurance offered through Public Storage are not included in the release and will be unaffected by the Settlement.  In return, Public Storage, its affiliated companies, and their officers, employees, directors, and agents, will likewise provide Plaintiff and the Settlement Class, and their attorneys and agents, with a release of all claims that were or could have been brought against any of them arising from the bringing or conduct of the litigation or the bringing of the claims set forth in the complaints filed by the Plaintiff.

### 4.        The Notice Program

The Claims Administrator is AB Data.  All fees, costs, and expenses of the Claims Administrator incurred in connection with the Notice Program will be paid from the Settlement Fund.  The Notice Program is designed to provide the best notice practicable, and it is tailored to

take advantage of the information Public Storage has about Settlement Class Members.  The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class about the terms of the Settlement, Class Counsel's Fee Application and request for Service Award for the Plaintiff, and their rights to opt out of the Settlement Class or object to the Settlement, Class Counsel's Fee Application, and/or the request for a Service Award for the Plaintiff.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  The Notice and Notice Program satisfy all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

The Notice Program provides notice in four different ways:  (1) email notice to those Settlement Class Members for whom Public Storage has an email address ("Email-Postcard Notice"); (2) postcard notice ("Mailed Notice") to those Settlement Class Members for whom Public Storage does not have email addresses; (3) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail or email notice is not possible or successful; and (4) a "Long Form" notice with more detail than the email, postcard, or publication notices, that will be available on the Settlement website (www.PublicStorageInsuranceLawsuit.com) ("Long Form Notice").

The Notice Program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date of the Final Approval Hearing; and the internet address of

the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.

### (a)    The E-Mailed and Mailed Notice Program

The Claims Administrator will provide email notice to all Settlement Class Members for whom Public Storage has email addresses.  The Claims Administrator previously provided notice of class certification to the Settlement Class Members and has more than 90% of Settlement Class Members' email addresses.  For those Settlement Class Members for whom Public Storage does not have email addresses, the Claims Administrator will provide postcard notice to them. The content of the emailed notice and the postcard notice will be the same and can be found at Exhibit B to the Class' Motion for Preliminary Approval.

### (b)    The Published Notice Program

The Claims Administrator shall administer the Published Notice Program and will publish notice in the form attached at Exhibit C to the Class' Motion for Preliminary Approval, agreed to by the Parties, and approved by the Court.  The Published Notice will be run in the *Miami Herald* and the *Tampa Tribune*.  The *Miami Herald* circulates throughout South Florida, which is where a majority of Public Storage's facilities are located in Florida, and has a daily circulation of 141,188. The *Tampa Tribune* circulates in the central and northern portions of Florida and has a daily circulation of 191,477.  These newspapers have a circulation that effectively covers Florida and will adequately supplement the email and postcard notice that the Class Members will receive.

### (c)    The Settlement Website

When the Class was certified, the Claims Administrator created a case specific website (www.publicstorageinsurancelawsuit.com) that contained information about the Class notice. That same website will be used by the Claims Administrator as a means for Settlement Class

Members to obtain notice of, and information about, the Settlement.  The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice substantially in the form attached at Exhibit D to the Class' Motion for Preliminary Approval, the Preliminary Approval Order, and such other documents as Settlement Class Counsel and counsel for Public Storage agree to post or that the Court orders posted on the Settlement Website.  These documents will remain on the Settlement Website at least until Final Approval.

## 5.    Claims Administration

As noted above, AB Data is the Claims Administrator and all fees and charges for the administration of the Settlement will be paid from the Settlement Fund.   The Claims Administrator's responsibilities include:

a.    Sending out email and postcard notice to the Class Members;

b.    Administering the Published Notice Program;

c.    Establishing and maintaining an address where requests for exclusion from the Settlement Class may be sent;

d.    Establishing and maintaining the Settlement Website;

e.    Processing all requests for exclusion from the Settlement Class;

f.    Providing weekly reports that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

g.    In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

h.    Reviewing claims submitted by the Settlement Class Members and comparing those claims with Public Storage's records; and

i.     Processing and transmitting distributions to Settlement Class Members from the Settlement Fund.

### 6.   <u>Objections and Opt-Outs</u>

The Notice shall include a procedure for Settlement Class Members to object to the Settlement or any aspect of it.  The Notice shall also include a procedure for Settlement Class Members to opt out of the Settlement Class.  The Opt-Out period during which Settlement Class Members may object to the Settlement or opt-out of the Settlement Class is 60 days from the date of the mailing of notice to the Settlement Class.

Objections to the Settlement must be mailed to the Clerk of the Court, Class Counsel, and Public Storage's counsel. For an objection to be considered by the Court, the objection must be received by the Court on or before the last day of the Opt-Out period, as specified in the Notice. To be considered by the Court, the objection must also set forth the information provided in paragraph 28 of the Settlement Agreement.

### 7.   <u>Settlement Termination</u>

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court.

### 8.   <u>Class Representative Service Award</u>

Class Counsel will seek and Public Storage will not oppose a Service Award of $10,000 for the Class Representative Brian Morgan.  The Service Award will be paid from the Settlement Fund and will be in addition to the relief Mr. Morgan is entitled to under the terms of the Settlement.  This award will compensate Mr. Morgan for his time and effort in the lawsuit, including his time and effort in preparing for and appearing at depositions, preparing to testify at trial, and for the risks he assumed in prosecuting this lawsuit against Public Storage.

9.      **Attorneys' Fees and Costs**

Public Storage will object to any fee request by Class Counsel that exceeds 25% of the Settlement Fund, but Public Storage will not object to reimbursement of documented litigation costs and expenses actually incurred and paid.  Plaintiff agrees not to seek more than 35% of the Settlement Fund for attorneys' fees.  The Parties negotiated regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

III.    **ANALYSIS**

A.      **THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties'

good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).   Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted). When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.   Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See, e.g.*, *Smith*, 2010 WL 2401149 at *2.

The Court's granting of Preliminary Approval will allow all Settlement Class Members to receive notice of the terms of the Settlement, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which time further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement may be presented by the Parties. *See Manual for Compl. Lit.*, §§ 13.14, 21.632.   Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon

an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id.* § 13.14.

### B.  THIS SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel.  Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  The Class believes that the claims asserted are meritorious and that the Class would have prevailed if this matter proceeded to trial.  Public Storage argues that the Class' claims are unfounded, denies any potential liability, and has shown a willingness to litigate those claims vigorously.  The Parties concluded that the benefits of the Settlement outweigh the risks attendant to continued litigation that include, but are not limited to, the time and expenses associated with trial and the time, expense, and uncertainty associated with appellate review.

### 1.  This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length

negotiations by experienced Class Counsel").  The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this lawsuit.  The Parties engaged in two formal mediations before experienced and respected mediators.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").  The Parties continued to pursue those settlement negotiations through the weekend before trial was scheduled to begin and after the Court issued a series of key rulings on the admissibility of certain testimony and evidence at trial.

In negotiating this Settlement, Class Counsel conducted a thorough investigation and analysis of the Class' claims, engaged in extensive discovery with Public Storage, and had the benefit of key rulings from the Court on what testimony and evidence would be admissible at trial.  Class Counsel's review of that extensive discovery and the Court's ruling on the admissibility of testimony and evidence at trial, prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).  Class Counsel was also well-positioned to evaluate the strengths and weaknesses of the Class' claims, as well as the appropriate basis upon which to settle them, as a result of its extensive work on this case over the past seventeen months.

2.    **The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable**

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement is warranted.

(a)    **Likelihood of Success at Trial**

The Class states that it is confident in the strength of its case, but also pragmatic in its awareness of the various defenses available to Public Storage, and the risks inherent in trying this lawsuit. As noted above, the Court entered key rulings on the eve of trial on the admissibility of certain testimony and evidence at trial that impacted the Class' success at trial. Furthermore, the success of the Class' FDUTPA claim on appellate review, turned on, among other things, whether the insurance exemption to FDUTPA applied to the Class' claim. Based on these issues, Class Counsel determined that the Settlement reached with Public Storage outweighs the risks inherent with continued litigation of this lawsuit. Furthermore, even if the Class did prevail at trial, any recovery would be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members without any further delay.

(b)    **Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Courts have determined that settlements may be reasonable even where the Class recovers only part of their

actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  *Lipuma*, 406 F. Supp. 2d at 1323.

The Court finds that the $5 million Settlement Fund in this case is an excellent result, given the complexity of the litigation and the significant risks and barriers that would have continued to loom in the absence of Settlement.  Based on Public Storage's data, the $5 million Settlement Fund represents approximately 20% of the Settlement Class Members' most probable damages recovery if the jury found in favor of the Class at trial.  Accordingly, there can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Court's rulings on key testimony and evidence immediately prior to the beginning of trial, Public Storage's defenses, the numerous appellate issues in this lawsuit, and the challenging and unpredictable path of litigation the Class faced absent a settlement.

### (c)      Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable.  Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  The costs and expenses associated with a trial would have been enormous, including the costs and fees associated with the Class' expert and the presentation of evidence.  These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542.

### (d)      Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. The Settlement was reached just days before trial was to begin and after extensive pretrial discovery, including the production and review of hundreds of thousands of pages of documents produced by Public Storage, approximately 27 depositions after the Court certified a litigated class, and after Public Storage's motion for summary judgment was denied. As a result, Class Counsel was extremely well-positioned to confidently evaluate the strengths and weaknesses of the Class' claims and prospects for success at trial and on appeal.

## C.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For purposes of this Settlement only, Public Storage does not oppose class certification. For the reasons set forth below and as the Court previously found in its Order granting class certification, certification is appropriate under Rule 23(a) and (b)(3). *See* [D.E. 305].

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of over two hundred thousand Public Storage customers, and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Public Storage's offering of the TIP based on its representations in its Lease Rental Agreement and Insurance Addendum – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, the Class representative's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs

are typical of the class where they "possess the same interest and suffer the same injury as the class members"). The Class representative is typical of absent Settlement Class Members because he was subjected to the same Public Storage practices and claims to have suffered from the same injuries, and because the Class representative will benefit equally from the relief provided by the Settlement.

The Class representative and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). The Class representative's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because the Class representative and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Further, the Class representative and the Settlement Class are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. Class Counsel devoted substantial time and resources to the vigorous litigation of the Action, which resulted in the successful certification of a litigated Class and the denial of Public Storage's Motion for Summary Judgment.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of

individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  The Class representative readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  For example, each Settlement Class Member's relationship and claims are based on Public Storage's Lease Rental Agreement and Insurance Addendum, all of which are the same or substantially similar in all relevant respects.  *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").  Further, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court certifies the Settlement Class.

### D.        THE COURT APPROVES THE PROPOSED NOTICE PROGRAM

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  Manual for Compl. Lit. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th

Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice Program satisfies all of these criteria.  As recited in the Settlement and above, the Notice Program will properly inform Settlement Class Members of the substantive terms of the Settlement.  It will advise Settlement Class Members of their options for opting out of, or objecting to, the Settlement, and how to obtain additional information about the Settlement.  The Notice Program is designed to reach a high percentage of Settlement Class Members and it exceeds the requirements of Constitutional due process.  Therefore, the Court approves the Notice Program and the form and content of the Notices found at Exhibit B – D to the Class' Motion for Preliminary Approval.

### E.       THE COURT WILL SCHEDULE A FINAL APPROVAL HEARING

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses.

### IV.   CONCLUSION

In light of the foregoing, it is ORDERED AND ADJUDGED that the Court hereby:

(1) GRANTS preliminary approval of the Settlement;

(2) CERTIFIES for settlement purposes the Settlement Class pursuant to Rule 23(b)(3) as follows:

All persons who rented storage units from Public Storage within the state of Florida and who purchased self-storage insurance

policies through Public Storage from May 1, 2010 through June 18, 2015.

Excluded from this Class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

(3) APPROVES the notice program set forth in the Agreement and as described above and APPROVES the form and content of the notices attached to the Class' Motion for Preliminary Approval of Class Settlement as Exhibits B – D;

(4) APPROVES the opt-out and objection procedures set forth in the Agreement and set forth above.  Settlement Class Members SHALL have 60 days from the date of the mailing of notice to the Settlement Class to object to or opt out of the Settlement;

(5) APPOINTS Plaintiff Brian Morgan as class representative;

(6) APPOINTS as Settlement Class counsel David M. Buckner, Seth E. Miles, and Brett E. von Borke from the law firm of Grossman Roth and Scott B. Cosgrove and Alec H. Schultz from the law firm of León Cosgrove, LLC;

(7) STAYS the lawsuit against Public Storage and suspends all upcoming deadlines pending final approval of the Settlement;

(8) SCHEDULES a final approval hearing for the **26th day of February, 2016** at **11:00 a.m**.  It is further

ORDERED AND ADJUDGED that Class counsel SHALL file papers in support of their Attorneys' Fees and Costs Award and Class Representative Incentive Award no later than **January 15, 2016**. It is further

ORDERED AND ADJUDGED that a motion for final approval of the Settlement Agreement SHALL be filed with the Court no later than **January 15, 2016**.

DONE and ORDERED in chambers at Miami, Florida, this _20th__ day of October, 2015.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of record