# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:14-CV-21559-UU

BRIAN MORGAN,
on behalf of himself
and all others similarly situated,

    Plaintiffs,

v.

PUBLIC STORAGE, a Maryland
Real Estate Investment Trust,

    Defendant.
_____/

**CLASS ACTION**

### DECLARATION OF KENDALL COFFEY

1. My name is Kendall Coffey and I am a founding partner of the law firm of Coffey Burlington. I submit this declaration in support of Class Counsel's Application for Attorneys' Fees arising from the Class Action Settlement Agreement (the "Settlement") with Defendant Public Storage in the above styled matter.

2. I have been a member of The Florida Bar since 1978. I am also the former United States Attorney for the Southern District of Florida from 1993-1996 and currently serve as the Chair of the Southern District Conference, Florida Judicial Nominating Commission. I am actively engaged in the practice of law in federal and state courts throughout Florida and the United States. My practice is concentrated in the areas of complex civil and criminal, at the trial and appellate levels and also includes investigative and administrative proceedings. My *curriculum vitae* is attached as Exhibit A.

3. I am familiar with the fees charged by attorneys in this jurisdiction, including fees requested and awarded in class action cases.

4. I am also familiar with the case law regarding attorneys' fee awards in class actions in the Eleventh Circuit and, in particular, *Camden I Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

5. I have been asked by Class Counsel to render an opinion regarding their request for attorneys' fees arising from the Settlement between a class of Florida consumers that purchased self-storage rental insurance at Public Storage (the "Class") and Public Storage. Specifically, I have been asked whether Class Counsel's request for attorneys' fees equal to thirty-five percent of the $5,000,000 common fund secured through the Settlement is reasonable under the law and the facts of this case.

6. In rendering my opinion, I initially reviewed the entire docket sheet for this action (from its inception on April 30, 2014 through January 14, 2016), and also reviewed the following specific materials:

   a. Plaintiff's First Amended Class Action Complaint [D.E. 79];

   b. Public Storage's Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint [D.E. 80];

   c. Plaintiff's Motion for Class Certification [D.E. 163]; Public Storage's Response to Plaintiff's Motion for Class Certification [D.E. 138]; and Plaintiff's Reply in Support of his Motion for Class Certification [D.E. 154];

   d. Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification [D.E. 305];

   e. Public Storage's Motion for Summary Judgment [D.E. 195]; the Class' Response to Public Storage's Motion for Summary Judgment [D.E. 253]; Public Storage's Reply in Support of its Motion for Summary Judgment [D.E. 274]; and the Class' Motion for Reconsideration of the Court's Order on Summary Judgment [D.E. 318].

   f. Omnibus Order Granting in Part and Denying in Part Public Storage's Motion for Summary Judgment [D.E. 313];

   g. The Class Action Settlement Agreement between Pubic Storage and the Plaintiff [D.E. 367-1].

   h. Unopposed Motion for Preliminary Approval of the Class' Settlement [D.E. 367]; and

   i. Order Granting Preliminary Approval of Class Settlement [D.E. 371].

  7. I also conferred with David M. Buckner, Esq., one of the attorneys appointed as Class Counsel by the Court, to obtain specific background information about this case and the Settlement.

  8. Based on my review of the materials, my experience with the award of attorneys' fees as a practitioner who has litigated class actions, and the law in this Circuit, it is my opinion that Class Counsel's request for attorneys' fees of thirty-five percent of the $5,000,000 common fund created by the Settlement is reasonable and extremely well justified.

  9. In *Camden I*, the Eleventh Circuit announced that in cases where a common fund has been created, attorneys' fees were to be awarded based on a percentage of the fund that had been created for the benefit of the class, and not the lodestar method: "Henceforth in this [C]ircuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. The

Eleventh Circuit noted that while twenty-five percent (25%) appeared to be the "benchmark" percentage for a fee award, that benchmark "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775.

10. *Camden I* also concluded that, in determining the appropriate percentage, a District Court should consider the following factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

    a.    time and labor required;

    b.    novelty and difficulty of the questions involved;

    c.    the skill requisite to perform the legal services properly;

    d.    the preclusion of other employment due to acceptance of the case;

    e.    the customary fee;

    f.    whether the fee is fixed or contingent;

    g.    time limitations imposed by the client or the circumstances;

    h.    the amount involved and the results obtained;

    i.    the experience, reputation, and ability of the attorneys;

    j.    the undesirability of the case;

    k.    the nature and length of the professional relationship with the client; and

    l.    awards in similar cases.

11. In my opinion, an analysis of these factors – which are discussed in detail below – strongly supports Class Counsel's request for a fee equal to thirty-five percent of the $5,000,000 common fund that resulted from their efforts in this case.

## THE TIME AND LABOR REQUIRED

12. A tremendous effort, including thousands of hours of time and labor was required of Class Counsel in prosecuting this case.

13. The crux of this case involved the Class' claims that Public Storage deceived its tenants by claiming in the Self-Storage Rental Agreement that Public Storage would not insure its tenants' goods and that Public Storage would pass the self-storage insurance premiums paid by the Class for self-storage insurance to an independent insurance company. The Class demonstrated, however, that in reality Public Storage was keeping more than 75% of each insurance premium dollar and that Public Storage and its affiliates were actually insuring the Class' goods through a complex reinsurance scheme.

14. The Class demonstrated that Public Storage used a third-party insurance company to front the sale of the self-storage insurance to its tenants because Public Storage was not licensed to sell insurance. In furtherance of its scheme, the third-party insurance company would immediately transfer 100% of the risk of each self-storage insurance policy and 99% of the premiums paid by the Class to Public Storage of Hawaii, a wholly owned subsidiary of Public Storage specifically created by Public Storage to reinsure all of the self-storage insurance policies purchased by the Class. Public Storage of Hawaii then repaid 75% of the Class' premium payments to Public Storage. The Class successfully pled and certified a RICO count against Public Storage. In addition, the Class brought various breach of contract claims and claims for violating Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

15. Public Storage argued that it did not deceive the Class, that the Class received the benefit of the self-storage insurance that it purchased and was charged the agreed upon price, that the language in the Self-Storage Rental Agreement was true and accurate, and that Public

5

Storage did not violate RICO, FDUTPA, or breach any of its contracts with the Class.  Public Storage argued that the Self-Storage Rental Agreement was not deceptive because Public Storage passed the insurance premiums collected from the Class to an independent insurance company and that the Self-Storage Rental Agreement was silent on whether the self-storage insurance policies would be reinsured.  Public Storage also argued that the Class did not care what company, if any, reinsured the self-storage insurance policies purchased at its locations.  Furthermore, Public Storage argued that the access fee paid by Public Storage of Hawaii to Public Storage was not a kickback in terms of a RICO violation put paid by its affiliate for exclusive access to Public Storage's customers.  Public Storage also argued that the filed-rate doctrine and the insurance exemption precluded the Class' FDUTPA claim and that it did not breach any of its contracts with the Class members.

16.    It is evident from a review of the docket sheet and my discussions with Mr. Buckner that this matter was investigated extensively before the Complaint was filed.  In fact, counsel spent months investigating the matter in order to determine how the scheme was perpetrated, who the different parties involved in the scheme were, who the proper defendants were, and what legal theories would allow the Class to recover.  Furthermore, this lawsuit was litigated with great intensity for an extended period of time – nearly two years – and only settled days before trial.  The proceedings are summarized below.

17.    The Class filed its Complaint on April 30, 2014.  [D.E. 1].  On June 2, 2014, Public Storage filed its Motion to Dismiss the Class' Complaint [D.E. 13] and its Motion to Strike the Class' Nationwide Class Allegations [D.E. 14].  The Class filed its response to Public Storage's Motion to Dismiss [D.E. 17] and Motion to Strike Nationwide Class Allegations [D.E. 15] on June 19, 2014. Public Storage filed its Reply in Support of its Motion to Dismiss [D.E.

23] and its Motion to Strike Nationwide Class Allegations [D.E. 24] on June 30, 2014. The Court denied Public Storage's Motion to Dismiss and Motion to Strike Nationwide Class Allegations on July 2, 2014. On October 28, 2014, the Class filed its First Amended Complaint. [D.E. 79]. Public Storage filed its Answer and Affirmative Defenses on November 12, 2014. [D.E. 80].

18. There was significant motion practice surrounding the format in which documents would be produced in this case. After multiple motions and hearings on the matter, the Court entered a detailed and comprehensive Confidentiality Order. [D.E. 47]. Thereafter, the parties produced more than a hundred thousand pages of documents and many gigabytes of data. Given the volume of documents produced by the parties, thousands of hours of attorney time was spent by Class Counsel reviewing and coding the documents for use in its affirmative case. After completing this massive document review project, Class Counsel took the depositions of more than thirteen individuals.

19. The Class filed its Motion for Class Certification. [D.E. 163]. Public Storage filed its Response to the Class' Motion for Class Certification on January 14, 2015. [D.E. 138]. The Class filed its Reply in Support of its Motion for Class Certification on January 26, 2015. [D.E. 154]. The Court on April 29, 2015, entered its Order Granting in Part and Denying in Part the Class' Motion for Certification. [D.E. 305]. Specifically, the Court certified the Class' RICO claim and two Florida sub-classes related to the Class' breach of contract and FDUTPA claims. [D.E. 305 at 41-42].

20. Public Storage filed its Motion for Summary Judgment on March 6, 2015. [D.E. 195]. The Class filed its Response to Public Storage's Motion for Summary Judgment on March 20, 2015. [D.E. 253]. Public Storage filed its Reply in Support of its Motion for Summary

Judgment on March 27, 2015. [D.E. 274]. The Court entered its Omnibus Order Granting in Part and Denying in Part Public Storage's Motion for Summary Judgment. [D.E. 313]. Specifically, the Court decertified the Class' RICO claim and breach of contract claim and granted Public Storage summary judgment on them. The Court, however, denied Public Storage's Motion for Summary Judgment on the Class' FDUTPA claim.

21. The parties filed numerous *Daubert* challenges, motions *in limine*, and other appropriate pre-trial filings. The Court ruled on those motions in anticipation of the impending trial. Only days before the trial was to begin, and only after certain key rulings were entered by the Court, were the parties ultimately able to negotiate a resolution of this matter. But that too required significant effort. The parties had previously engaged in two all-day mediations and drawing on those experiences were able to agree on the material terms of a settlement.

22. On September 9, 2015, after nearly two years of litigation, the parties notified the Court of the Settlement. Plaintiffs moved to certify a settlement class and approve the Settlement. [D.E. 367]. The Court granted preliminarily approval on October 21, 2015. [D.E. 371].

23. Undoubtedly, the time and labor required and expended by Class Counsel warrants the requested fee of thirty-five percent of the $5,000,000 common fund.

24. Furthermore, under *Camden I*, there is no requirement for a lodestar "cross-check" against the fee request based on a percentage of the common fund. Nor do I believe that a "cross-check" is required, especially in a case like this one that was litigated extensively for nearly two years and only settled on the eve of trial. Nonetheless, I have discussed with Mr. Buckner the issue of Class Counsel's lodestar in this case and have reviewed summaries of the attorney time spent by the lawyers involved. Based on the information shared with me and the

records I reviewed, and my independent knowledge of Mr. Buckner and his firm, I am of the opinion that Class Counsel's hourly rates are reasonable and that the total number of hours expended were reasonable and necessary in the prosecution and settlement of this case. The firms involved expended more than 6,000 hours of attorney time at a total billable cost of more than $3 million. If approved, the requested thirty-five percent fee, which amounts to $1,750,000 is substantially less than the amount of attorney fees actually spent to litigate this matter. Accordingly, even at thirty-five percent Class Counsel will not receive any multiplier for the work that it performed on this case and will actually recover less than it expended in attorney time to prosecute this matter. In my opinion, the requested fee of thirty-five percent is well below reasonable guidelines in a case of this magnitude and difficulty and should be awarded to Class Counsel.

### THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

25. This factor, along with the results obtained, are the most compelling factors supporting Class Counsel's requested fees in this case. This was no ordinary class action. The novelty and difficulty of the issues involved created significant risks for Class Counsel. These risks are summarized below.

26. This case was a remarkably complex class action involving a highly intricate reinsurance scheme with various companies participating in that scheme around the United States. It took Class Counsel months of investigative work to understand and prepare a Complaint that could survive a motion to dismiss. The amount of time and investigative work was truly impressive. Class Counsel spent a tremendous amount of time determining how the reinsurance scheme was structured, identifying the entities involved, tracing the flows of money,

and developing the legal theories to hold Public Storage liable. The case was not only novel but incredibly complex.

27. All of Class Counsel's efforts were required because the counts being brought, including RICO and FDUTPA, are incredibly complicated and difficult to plead considering the state of RICO law and the insurance exemptions available under FDUTPA. The Class' claims were predicated on the representations made in the Self-Storage Rental Agreement, the conduct of the various parties involved in the reinsurance scheme, and the large sums being repaid to Public Storage by its own wholly owned affiliate. Public Storage argued throughout the case that the Class could not establish that the Self-Storage Rental Agreement was deceptive, that the Class had suffered any damages, that the RICO enterprise violated the law, and that the insurance exemption under Florida law precluded the Class' FDUTPA claim. These formidable defenses required Class Counsel to develop well-reasoned yet novel theories in order to survive Public Storage's Motion to Dismiss, Motion for Summary Judgment, and its Response to the Class' Motion for Class Certification.

28. This case presented a host of novel and difficult questions – any one of which could have resulted in an adverse outcome – such that Class Counsel undertook significant risk when accepting this representation. Only Class Counsel's application of skill and effort ensured a different result and a settlement on the eve of trial.

### THE SKILL REQUISITE TO PERFORM THE LEGAL SERVICES PROPERLY, AND THE REPUTATION AND EXPERIENCE OF THE ATTORNEYS

29. There can be no doubt that this action required a high level of skill to perform the legal services required. Indeed, this case was rife with litigation perils. I believe that few attorneys combined the ability and the fortitude to have navigated the path to a favorable resolution.

30.   I am familiar with the reputation and experience of Class Counsel and it comes as no surprise to me that they managed to resolve this matter favorably for the Class. I know David M. Buckner, Seth E. Miles, and Scott Cosgrove and I know their reputations. They are among an elite group of lawyers in our District. They have earned a well-deserved reputation as highly skilled and ethical advocates. I am also familiar with some of the other lawyers who assisted in this action. Working together, this team of lawyers accomplished outstanding results for the Class in the face of substantial risks and legal impediments. Had these lawyers not had the requisite skill to perform the necessary services, it is highly doubtful Class Counsel could have achieved the results obtained for the Class in this case.

### PRECLUSION OF OTHER EMPLOYMENT BECAUSE OF THIS CASE

31.   This matter obviously required Class Counsel to commit a massive amount of time and resources – which is particularly noteworthy given that the firms involved are relatively small. I understand from my discussions with Class Counsel that because this case took up so much time, they were required to turn away other work that they otherwise would have accepted. This, in my opinion, is not surprising given the complexity and difficulty of the issues involved, as well as the amount at stake. In fact, Class Counsel spent more than 6,000 hours in prosecuting this matter, which amounted to more than $3 million in attorney time, an amount substantially less than the $1,750,000 in fees requested from the common fund by Class Counsel. Had Class Counsel not pursued this litigation they could have pursued other matters that would have, at a minimum, compensated them at their hourly rates or would have paid a multiplier.

### THE CUSTOMARY FEE

32.   In contingency cases such as this one, the fees agreed between client and counsel normally range between twenty-five percent and forty percent. Accordingly, the request of

11

thirty-five percent being made here is within the range of customary fees for similar cases in our community. In fact, considering that Class Counsel spent more than $3,000,000 in attorney time to prosecute this matter the request for thirty-five percent of the common fund is well below the actual costs based on hourly rates that was required to litigate this case.

### A CONTINGENT OR FIXED FEE

33. This case, like virtually all class actions, was undertaken on a contingency fee basis. Class Counsel spent an enormous amount of their time and advanced substantial amounts of money in the form of expenses without receiving any compensation. And they easily could have lost this case for any of a number of reasons. Instead, they obtained a recovery of $5,000,000 on the eve of trial. Given their hard work and the outstanding results obtained in this case, they should be compensated appropriately.

### AMOUNT INVOLVED AND RESULTS OBTAINED

34. The excellent result obtained through the Settlement, when coupled with the risks undertaken by Class Counsel, are perhaps the most significant factors to be considered when assessing Class Counsel's fee request.

35. The Settlement created a common fund for the Settlement Class in the amount of $5,000,000. According to Class Counsel, the $5,000,000 common fund represents approximately twenty percent of the maximum damages that could be recovered by the Class on its FDUTPA claim at trial. In other words, the recovery equals approximately twenty percent of the Class' damages under the most favorable damage theory, assuming that the Class would have been able to overcome Public Storage's formidable defenses on individual Class member

damages. Furthermore, the foregoing assumes that this case proceeded to final judgment in favor of the Class and, moreover, that the judgment obtained would be affirmed on appeal. As discussed above, however, there were significant legal issues and associated risks related to Public Storage's liability under FDUTPA, not the least of which involved the insurance exemption under FDUTPA that could have arguably precluded the Class' sole remaining claim at trial.

36. In spite of the risks presented in this action (which I addressed above), I am of the opinion that the results obtained by Class Counsel through this Settlement are excellent. Accordingly, Class Counsel should be commended and appropriately compensated for achieving such an outstanding result.

### THE UNDESIRABILITY OF THE CASE

37. It is noteworthy that during the entire time this action was pending, no other firms attempted to bring suit against Public Storage to recover on behalf of the Class under the same legal theories advanced in this case. Clearly, the legal marketplace perceived this case as undesirable – which is not surprising given the number of significant legal risks it presented. Class Counsel are the only lawyers who risked their time and scarce resources on behalf of the Class. That Class Counsel did so in light of the significant risks presented further counsels in favor of their fee request.

### AWARDS IN SIMILAR CASES

38. Based on my experience, I believe that Class Counsel's fee request of thirty-five percent of the $5,000,000 common fund, or $1,750,000, in this case is consistent with other fee awards in class actions in this District and Circuit. Those other fee awards include the following:

    a. *In re Checking Account Overdraft Litigation*, 830 F.Supp. 2d 1330, 1358-68 (S.D. Fla. 2011) (30% fee awarded on settlement of $410 million);

   b. *In re Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (33.5% fee awarded on settlement of $100 million);

   c. *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33.3% fee awarded on $77.5 million settlement);

   d. *In re Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D.Fla. Apr. 19, 2005) (33.3 % fee awarded on settlement of over $30 million);

   e. *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Distr. LEXIS 25721 (S.D. Fla. 2002) (30% fee awarded on $12 million settlement);

   f. *In re CHS Elecs., Inc. Sec. Litig.*, 99-8186-CIV-Gold (S.D. Fla. 2002) (30% fee awarded on settlement of over $11 million);

   g. *Allpatattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185 (S.D. Fla. 2006) (31.3% fee awarded on settlement of $1.06 billion);

   h. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (33.3% fee affirmed on settlement of $40 million);

   i. *Ehrenreich v. Sensormatic Elecs. Corp.*, 95-6637-CIV-Zloch (S.D. Fla. 1998) (30% fee awarded on settlement of over $44 million); and

   j. *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33% fee awarded on $10 million settlement).

## CONCLUSION

39. In conclusion, based on my experience and my assessment of the work performed by Class Counsel, I am of the opinion that their fee request of thirty-five percent of the $5,000,000 common fund is reasonable and justified. Class Counsel undertook an incredibly risky case, one perceived as undesirable by the rest of the legal marketplace, and through their extraordinary diligence, perseverance and skill, obtained an outstanding result for the Class. Class Counsel are to be commended for such an excellent result, and should be compensated in accordance with their request, which is warranted and reasonable given similar fee awards.

40. I have not requested and I am not accepting a fee for providing this opinion.

I declare that the foregoing is true and correct.

Dated: January 15th, 2016.

/s/ Kendall Coffey
Kendall Coffey